No. 22-2818

# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

_____

Ashley Quinones, as Trustee for Brian Jesus Quinones-Rosario,

*Plaintiff-Appellant*,

v.

City of Edina, Minnesota; City of Richfield, Minnesota; Nicholas Pedersen; Benjamin Wenande; Joseph Carroll; Macabe Stariha; and Dylan Schultz, all individuals being sued in their individual and official capacities,

*Defendants-Appellees.*

*On Appeal from the United States District Court for the District of Minnesota Civil No. 0:20-cv-01329 (PJS/BRT)*

## BRIEF OF PLAINTIFF-APPELLANT

Brian K. Lewis (#18-0193)
Francis H. White III (#19-0201)
FRANCIS WHITE LAW, P.L.L.C.
8362 Tamarack Village
Suite 119-220
Woodbury, MN 55125
(651) 829-1503
(651) 829-1431
brian.lewis@franciswhitelaw.com
francis.white@franciswhitelaw.com

*Attorneys for Appellant*

Patrick S. Collins
Joseph E. Flynn
JARDINE, LOGAN, & O'BRIEN, PLLP
8519 Eagle Point Blvd., Suite 100
Lake Elmo, MN 55042
pcollins@jlolaw.com
jflynn@jlolaw.com
For City of Edina Defendants

Julia C. Kelly
Jason M. Hively
Stephanie A. Angolkar
IVERSON REUVERS
9321 Ensign Avenue
Bloomington, MN 55438
julia@iversonlaw.com
jasonh@iversonlaw.com
stephanie@iversonlaw.com
For City of Richfield Defendants
*Attorneys for Appellees*

# SUMMARY OF THE CASE

On September 7, 2019, members of the Defendant Police Departments fired 18 rounds at Mr. Brian Jesus Quinones-Rosario (hereinafter "Decedent"), seven of which hit, killing him almost instantaneously. What happened prior to the killing is hotly disputed between the parties.

After Decedent's widow was appointed Trustee by the Hennepin County District Court, she filed this action in the District Court for the District of Minnesota (hereinafter "District Court").[1] After extensive discovery, all Defendants filed motions for summary judgment.[2] Plaintiff responded.[3] Defendants replied.[4] A motion hearing was held on February 7, 2022, before the Honorable Patrick J. Schiltz.[5] The District Court granted the motions on July 26, 2022.[6] Judgment entered the next day.[7]

Appellant requests 20 minutes for oral argument be GRANTED. Extending qualified immunity to the officers involved in this wrongful shooting is inappropriate when the standard for granting summary judgment was not met. Since Minnesota police officers are also held to a higher legal standard, summary judgment was inappropriately granted.

---

[1] Pl. App. 9; R. Doc. 1.
[2] Pl. App. 33; R. Doc. 27; Pl. App. 34-35; R. Doc. 33.
[3] Pl. App. 36-79; R. Doc. 41.
[4] Pl. App. 7; R. Doc. 43-44.
[5] Pl. App. 1296; R. Doc. 45.
[6] Pl. App. 1345-1365; R. Doc. 50.
[7] Pl. App. 1366; R. Doc. 51.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE ................................................................. i

JURISDICTIONAL STATEMENT ..................................................... 1

STATEMENT OF THE ISSUES ......................................................... 2

STATEMENT OF THE CASE ............................................................ 3

SUMMARY OF ARGUMENT ........................................................... 17

ARGUMENT ...................................................................................... 17

   I.  Standard of Review ............................................................... 17

   II.  If the acts of the police officers satisfied the criminal burden, then it must have satisfied the civil burden. .............................................. 19

   III.   If the District Court believed that Decedent was mentally troubled, then the District Court erred in its analysis of the Appellees' conduct that night. ............. 26

CONCLUSION ................................................................................... 29

Appellate Case: 22-2818   Page: 3   Date Filed: 10/19/2022 Entry ID: 5209210

# TABLE OF AUTHORITIES

**Supreme Court Opinions**

Ashcroft v. al-Kidd, 563 U.S. 731 (2011) ................................................ 17

Carpenter v. Wabash Ry. Co., 309 U.S. 23 (1940) .............................. 19

City & Cty. of San Francisco v. Sheehan, 135 S. Ct. 1765 (2015) ......... 20

Harlow v. Fitzgerald, 457 U.S. 800 (1982) ...................................... 17, 18

Kisela v. Hughes, 138 S. Ct. 1148 (2018) .............................................. 24

Mullenix v. Luna, 577 U.S. 7 (2015) ..................................................... 18

Plumhoff v. Rickard, 134 S. Ct. 2012 (2014) ....................................... 20

Tennessee v. Garner, 471 U.S. 1 (1985) ................................... 2, 25, 26

White v. Pauly, 137 S. Ct. 548, 580 U.S. 73 (2017) ....................... 18, 26

**Federal Court Opinions**

Dillard v. O'Kelly, 961 F.3d 1048 (8th Cir. 2020) ............................... 18

Littrell v. Franklin, 388 F.3d 578 (8th Cir. 2004) ............................... 18

Ludwig v. Anderson, 54 F.3d 465 (8th Cir. 1995) ............ 2, 17, 25, 26, 27, 28

Smith v. Conway Cnty., 759 F.3d 853 (8th Cir. 2014) ........................... 2

Sok Kong, Trustee for Map Kong, Decedent v. City of Burnsville, et al., 960 F.3d 985 (8th Cir. 2020) ...................................................................... 2

United States v. Chauvin, D. Minn. 21-CR-108 ................................... 20

Winters v. Adams, 254 F.3d 758 (8th Cir. 2001) ................................... 18

**United States Code**

25 U.S.C. §1921 (2020) ....................................................................... 26

28 U.S.C. §1291 (2020) ......................................................................... 1

28 U.S.C. §1331 (2020) ......................................................................... 1

28 U.S.C. §1343(a)(1) (2020) ................................................................ 1

28 U.S.C. §1367 (2020) ......................................................................... 1

42 U.S.C. §1983 (2020) ............................................................. 1, 17, 20

**State Court Opinions**

State v. Noor, 964 N.W.2d 424 (2021). ................................................ 22

Appellate Case: 22-2818    Page: 4    Date Filed: 10/19/2022 Entry ID: 5209210

<u>State of Minnesota v. Noor</u>, Henn. Cty. Dist. Ct. no. 27-CR-18-6859. ............. 20, 22

<u>In the Matter of the Appointment of a Trustee for the Heirs of Brian Jesus Quinones-Rosario, Decedent</u>, Hennepin Cty. Dist. Ct. no. 27-CV-19-17108 .......... 1

<u>State v. Chauvin</u>, Henn. Cty. Dist. Ct. File No. 27-CR-20-12646 .......................... 23

<u>State v. Potter</u>, Henn. Cty. Dist. Ct. Case No. 27-CR-21-7460. ............................ 20

## State Statutes

Minn. Stat. §609.066, subd. 1a (2020) ................................................................. 23, 27

Minn. Stat. §626.8434, subd. 1 (2020) ...................................................................... 24

Minn. Stat. §626.8434, subd. 3 (2020) ...................................................................... 24

Minn. Stat. §573.02 (2020) ............................................................................................ 1

## Rules

Fed. R. App. P. 4(a) ........................................................................................................ 1

## Other

Model Civ. Jury Instr. 8th Cir. 4.40 (2018)............................................................... 26

"Philando Castile's mom: 'We are being hunted' by police." CNN, Jul. 7, 2016, (available at: https://www.youtube.com/watch?v=ZuhbAZ6hlH4 (last accessed Oct. 15, 2022). ................................................................................................................ 21

"Two Minnesota police shooting trials, two very different verdicts." Jon Collins & Riham Feshir, Minn. Public Radio News, May 1, 2019. (available at: https://www.mprnews.org/story/2019/05/01/two-minnesota-police-shooting-trials-two-very-different-verdicts ) (last accessed Oct. 15, 2022). ....................... 21, 22, 23

Appellate Case: 22-2818    Page: 5    Date Filed: 10/19/2022 Entry ID: 5209210

## JURISDICTIONAL STATEMENT

The individual Defendant police officers of Richfield and Edina, Minnesota, were on duty and acting under color of State and Federal law when they deprived the Decedent of his life.[8] Decedent's widow, the Plaintiff in this case, was lawfully appointed as Trustee for the Decedent by the Hennepin County District Court to bring this action.[9] This action was timely filed as there is no federal or state statute of limitations on a damages action resulting from murder.[10] Therefore, the United States District Court for the District of Minnesota had jurisdiction over this action.[11] The District Court granted summary judgment on July 26, 2022.[12] The District Court entered judgment on July 27, 2022.[13] Appellant timely filed her Notice of Appeal on August 25, 2022.[14] Since the order granting summary judgment is a final order that disposed of all parties' federal claims, this Court has jurisdiction over this appeal.[15]

---

[8] *See* 42 U.S.C. §1983 (2020).
[9] *See* Minn. Stat. §573.02; In the Matter of the Appointment of a Trustee for the Heirs of Brian Jesus Quinones-Rosario, Decedent, Hennepin Cty. Dist. Ct. no. 27-CV-19-17108.
[10] *See* Minn. Stat. §573.02.
[11] 28 U.S.C. §1331; 28 U.S.C. §1343(a)(1); 28 U.S.C. §1367.
[12] Add. at 1.
[13] Pl. App. 8; R. Doc. 51.
[14] Pl. App. 8; R. Doc. 52.
[15] 28 U.S.C. §1291; Fed. R. App. P. 4(a).

1

## STATEMENT OF THE ISSUES

1. Did the District Court err in granting summary judgment when the District Court failed to fully consider the change in the standard for qualified immunity in Minnesota?

   APPOSITE CASE:

   Tennessee v. Garner, 471 U.S. 1 (1985).

   INAPPOSITE CASES:

   Smith v. Conway Cnty., 759 F.3d 853 (8th Cir. 2014)

2. Did the District Court err in granting summary judgment when it failed to analyze the effect that mental instability played on the Decedent?

   APPOSITE CASES:

   Ludwig v. Anderson, 54 F.3d 465, 472 (8th Cir. 1995).

   INAPPOSITE CASES:

   Sok Kong, Trustee for Map Kong, Decedent v. City of Burnsville, et al., 960 F.3d 985 (8th Cir. 2020).

2

## STATEMENT OF THE CASE

### A. Defendant Pedersen's Pursuit of the Decedent.

On the evening of September 7, 2019, Defendant Pedersen was on patrol, accompanied by a civilian ride-along, Heidi Lee, the Race and Equity Coordinator for the City of Edina, Minnesota.[16] At just after 10:00 p.m., Defendant Pedersen was at Normandale Frontage Road and 77th Street in the center lane at a stop light.[17] Defendant Pedersen stated he observed the Decedent's vehicle turn through the light without stopping or signaling.[18] Defendant Pedersen turned on his squad camera and began following the car.[19]

Defendant Pedersen followed Decedent and observed him speeding, occasionally moving into the wrong lane, and changing lanes without signaling.[20] Defendant Pedersen turned on his squad car's emergency lights to initiate a stop of Decedent on Parklawn Avenue.[21] Decedent's car continued at 10-15 mph over the speed limit without pulling over, stopping, and/or complying with the police lights and siren.[22] Defendant Pedersen informed dispatch of the pursuit and requested assistance, but did not inform them he had a civilian city employee in his vehicle,

---

[16] Pl. App. 1118; R. Doc. 37-5, at 6.
[17] Pl. App. 1266; R. Doc. 41-1, at 19.
[18] Pl. App. 609; R. Doc. 36-10, at 527.
[19] Pl. App. 1266; R. Doc. 41-1, at 19.
[20] Pl. App. 1130; R. Doc. 37-5, at 18.
[21] Pl. App. 971; R. Doc. 36-10, at 889.
[22] Pl. App. 1266-67; R. Doc. 41-1, at 19-20.

3

violating Edina Police Department policy regarding pursuits.[23] Defendant Pedersen's emergency lights can be seen through the rear window of Decedent's vehicle on Decedent's Facebook Live video around the time the parties enter the City of Richfield.[24] Defendant Pedersen's emergency lights were not visible inside the cab of Decedent's vehicle until nearly five minutes later.[25] Approximately eight seconds later, Decedent began to stop his vehicle and exited the vehicle approximately two seconds after that.[26]

### B. Defendant Officers' Reckless Actions, Inconsistent with Standard Law Enforcement Practices, Lead to the Precipitous Killing of Decedent.

Defendant Richfield Police Officers Macabe Stariha, Joseph Carroll, and Dylan Schultz joined the pursuit.[27] At 77th Street, Defendant Pedersen waited for another squad car to join him so that they could assist in stopping the vehicle.[28] Defendant Pedersen aired over the radio that he was going to attempt a Precision Immobilization Technique (PIT) maneuver on the pursued vehicle because it was not stopping and continued to make traffic violations.[29]

---

[23] Pl. App. 1118, 1128; R. Doc. 37-5, at 6, 16.
[24] Pl. App. 82 at 06:56; R. Doc. 36-9 06:56; Pl. App. 973; R. Doc. 36-10, at 891.
[25] Pl. App. 82 at 11:58; R. Doc. 36-9 at 11:58.
[26] Pl. App. 82 at 12:06-:08; R. Doc. 36-9 at 12:06-:08.
[27] Pl. App. 667, 685, 701; R. Doc. 36-10, at 585, 603, 619.
[28] Pl. App. 1266; R. Doc. 41-1, at 19.
[29] Pl. App. 684; R. Doc. 36-10 at 602.

4

Defendant Pedersen then attempted a PIT maneuver, which involves bumping the rear of a suspect car with a special bar on the front of the squad car to get the car to stop.[30] Defendant Pedersen missed the car and, before he could try again, the driver of the gray car engaged his brakes.[31] Although he indicated he was making a felony stop, Defendant Pedersen parked in front of the gray car (inconsistent with felony stop procedures), got out of his vehicle and drew his sidearm.[32]

Defendant Pedersen saw that the driver, Decedent, was now standing outside of his car.[33] Defendant Pedersen claimed he saw Decedent holding a knife in his hand, with the blade pointed up.[34] Defendant Pedersen radioed "gun" to other officers or said the word "gun" aloud, but soon amended his alarm to, "it's a knife."[35] Defendant Pedersen drew his weapon, and pursued on foot, Decedent – subsequently closing distance rather than exhaust other reasonable alternatives such as create distance, take cover, wait for back-up, and engage in de-escalation tactics.[36] Defendant Pedersen did not consider reasonable alternative actions prior to jumping

---

[30] Pl. App. 1129, R. Doc. 37-5 at 17; Pl. App. 1267; R. Doc. 41-1, at 20.

[31] Pl. App. 80 at 06:33; R. Doc. 36-1 at 06:33; Pl. App. 1112 at 06:33; R. Doc. 36-22 at 06:33.

[32] Pl. App. 1267; R. Doc. 41-1, at 20; Pl. App. 80 at 06:39; R. Doc. 36-1 at 06:39; Pl. App. 1112 at 06:39; R. Doc. 36-22 at 06:39; Pl. App. 81 at 03:33; R. Doc. 36-2 at 03:33; Pl. App. 1111 at 03:33; R. Doc. 36-19 at 03:33.

[33] Pl. App. 967; R. Doc. 36-10, at 894.

[34] Pl. App. 967; R. Doc. 36-10, at 894.

[35] Pl. App. 967; R. Doc. 36-10, at 894.

[36] Pl. App. 1283; R. Doc. 41-1, at 37.

5

out of his vehicle and moving towards the suspect immediately with his gun drawn in what officers later asserted was a felony stop.[37] Defendant Pedersen did not take the appropriate cover that law enforcement training requires law enforcement officers to take in the event of a felony stop.[38]

Decedent created distance between himself and Officer Pedersen by moving around and away from Defendant Pedersen.[39] There were no bystanders in the immediate direction that Decedent was moving as he was moving away from Defendant Pedersen across the median.[40] Defendant Pedersen himself stated he noticed Decedent became distracted by something to Decedent's right and Pedersen's left and moved in that direction, away from Defendant Pedersen.[41]

Defendant Schultz arrived on scene and jumped out of his squad vehicle, rushing towards Decedent and Defendant Pedersen.[42] Defendant Schultz charged directly at Decedent, the alleged "potential threat."[43] Both Defendant Schultz and

---

[37] Pl. App. 977; R. Doc. 36-10, at 895.

[38] Pl. App. 1282, 1284; R. Doc. 41-1, at 35, 37; Pl. App. 81 at 03:33-:54; R. Doc. 36-2 at 03:33-:54; Pl. App. 1111 at 03:33-:54; R. Doc. 36-19 at 03:33-:54.

[39] Pl. App. 81 at 03:33-:54; R. Doc. 36-2 at 03:33-:54; Pl. App. 1111 at 03:33-:54; R. Doc. 36-19 at 03:33-:54; Pl. App. 977; R. Doc. 36-10, at 895.

[40] Pl. App. 80 at 06:38-07:03; R. Doc. 36-1 at 06:38-07:03; Pl. App. 1112 at 06:38-07:03; R. Doc. 36-22 at 06:38-07:03.

[41] Pl. App. 967; R. Doc. 36-10, at 894.

[42] Pl. App. 81 at 03:39-:40; R. R. Doc. 36-2 at 03:39-:40; Pl. App. 1111 at 03:39-:40; R. Doc. 36-19 at 03:39-:40; Pl. App.700-13; R. Doc. 36-10, at 618-631.

[43] Pl. App. 81 at 03:40-:43; R. Doc. 36-2 at 03:40-:43; Pl. App. 1111 at 03:40-:43; R. Doc. 36-19 at 03:40-:43.

Appellate Case: 22-2818    Page: 11    Date Filed: 10/19/2022 Entry ID: 5209210

Defendant Pedersen did not place barriers between Decedent and themselves or attempt to create distance.[44] Defendant Schultz and Defendant Pedersen closed the distance between themselves and the subject while Decedent moved away from both officers.[45]

Defendant Schultz unholstered his taser as he saw that Decedent was moving away from Defendant Pedersen.[46] Decedent was in the middle of the westbound lanes of traffic as Defendant Schultz discharged the taser.[47] It is notable that Defendant Schultz was the only officer who discharged their taser.[48] Defendant Schultz was unsure if his taser made contact with Decedent.[49] Decedent moved towards Defendant Schultz and yelled, "Kill me, kill me."[50] Other officers began discharging their firearms at Decedent, and Defendant Schultz observed Decedent stop and brace himself on a tree in the median.[51] However, in a contradictory

---

[44] Pl. App. 81 at 03:33-:54; R. Doc. 36-2 at 03:33-:54; Pl. App. 1111 at 03:33-:54; R. Doc. 36-19 at 03:33-:54; Pl. App. 80 at 06:38-07:03; R. Doc. 36-1 at 06:38-07:03; Pl. App. 1112 at 06:38-07:03; R. Doc. 36-22 at 06:38-07:03.

[45] Pl. App. 81 at 03:33-:54; R. Doc. 36-2 at 03:33-:54; Pl. App. 1111 at 03:33-:54; R. Doc. 36-19 at 03:33-:54; Pl. App. 702-03; R. Doc. 36-10 at 620-21.

[46] Pl. App. 81 at 03:33-:54; R. Doc. 36-2 at 03:33-:54; Pl. App. 1111 at 03:33-:54; R. Doc. 36-19 at 03:33-:54; Pl. App. 702-03; R. Doc. 36-10 at 620-21.

[47] Pl. App. 81 at 03:33-:54; R. Doc. 36-2 at 03:33-:54; Pl. App. 1111 at 03:33-:54; R. Doc. 36-19 at 03:33-:54; Pl. App. 702-03; R. Doc. 36-10 at 620-21.

[48] Pl. App. 83-1110; R. Doc. 36-10, 1-1128.

[49] Pl. App. 702-03; R. Doc. 36-10 at 620-21.

[50] Pl. App. 704, 706; R. Doc. 36-10 at 622, 624.

[51] Pl. App. 497; R. Doc. 36-10 at 415.

7

statement, Defendant Schultz also stated that at the same time, Decedent was making slashing motions with his knife.[52]

The video actually shows the so-called "slashing motion" was actually his left arm, the arm with a hand that did not have an object in it, moving as Decedent was attempting to hide behind the tree in the median.[53] Decedent's right arm, the arm with a hand that did have an object in it, was tucked inward into his body.[54] Video evidence showed Decedent barely moved as he was shot multiple times between the time Decedent hunched over in a defensive, almost fetal posture, in the median until he hit the ground.[55] Decedent was physically showing signs of surrender as officers started shooting, and as officers continued shooting.[56]

The entire encounter between the time Decedent exited his vehicle and when the officers started shooting was less than twenty seconds.[57] Decedent was shot at by all five Defendant officers a total of seventeen times: Defendant Wenande, one

---

[52] Pl. App. 497; R. Doc. 36-10 at 415.
[53] Pl. App. 81 at 03:45-:46; R. Doc. 36-2 at 03:45-:46; Pl. App. 1111 at 03:45-:46; R. Doc. 36-19 at 03:45-:46.
[54] Pl. App. 81 at 03:45-:46; R. Doc. 36-2 at 03:45-:46; Pl. App. 1111 at 03:45-:46; R. Doc. 36-19 at 03:45-:46.
[55] Pl. App. 81 at 03:45-:47; R. Doc. 36-2 at 03:45-:47; Pl. App. 1111 at 03:45-:47; R. Doc. 36-19 at 03:45-:47.
[56] Pl. App. 81 at 03:45-:54; R. Doc. 36-2 at 03:45-:54; Pl. App. 1111 at 03:45-:54; R. Doc. 36-19 at 03:45-:54.
[57] Pl. App. 1230; R. Doc. 37-6 at 28.

8

shot; Defendant Pedersen, four shots; Defendant Carroll, four shots; Defendant Stariha, eight shots; Defendant Schultz, one shot.[58]

## **Defendant Wenande**

Defendant Wenande pulled up as Defendant Pedersen aired, "The car's stopping. He's got a knife, he's got a knife. Drop the knife."[59] As Defendant Wenande got out of the car, he heard officers say, "Drop the knife! Drop the knife! Drop the knife!"[60] Defendant Wenande heard several gunshots but could not see what was happening because of the squad cars in front of him.[61]

Defendant Wenande approached the scene and got onto the median.[62] He saw Decedent bracing himself on the north side of a tree with an open left hand and his closed right hand at his side.[63] Decedent locked eyes with Defendant Wenande and stared at him, displaying a "blank, no one's home stare" and Decedent exhibited signs of psychosis.[64] Decedent was clutching his right hand close to his body but Defendant Wenande could not see what Decedent was holding.[65] Decedent moved towards officers with clenched hands as other officers yelled, "Drop the knife." *Id.*[66]

---

[58] Pl. App. 106-07; R. Doc. 36-10 at 24-5.
[59] Pl. App. 106-07; R. Doc. 36-10 at 24-5.
[60] Pl. App. 106-07; R. Doc. 36-10 at 24-5.
[61] Pl. App. 106-07; R. Doc. 36-10 at 24-5.
[62] Pl. App. 106-07; R. Doc. 36-10 at 24-5.
[63] Pl. App. 106-07; R. Doc. 36-10 at 24-5.
[64] Pl. App. 106-07; R. Doc. 36-10 at 24-5.
[65] Pl. App. 106-07; R. Doc. 36-10 at 24-5.
[66] Pl. App. 106-07; R. Doc. 36-10 at 24-5.

Defendant Stariha was to the left of Defendant Wenande.[67] Defendant Wenande heard officers giving commands, heard gun shots but his visibility of the other officers and Decedent was obstructed.[68] Defendant Wenande did not visually observe Decedent wielding a knife prior to Defendant Wenande shooting Decedent.[69] Defendant Wenande did not describe Decedent as holding a weapon at the time he shot Decedent.[70]

**Defendant Stariha**

Defendant Stariha appeared on scene from the left, closing the distance between himself and Decedent.[71]

Defendant Stariha was on patrol; he heard Defendant Pedersen air that he was in pursuit of a car crossing from Edina into Richfield.[72] Defendant Stariha activated his squad camera.[73] The car passed Defendant Stariha at Wentworth Avenue, as did Defendant Pedersen's Edina police squad car.[74] Defendant Stariha began to follow at 50-60 feet behind both. *Id.* Defendant Stariha saw the car and the Edina squad slow or stop and heard Defendant Schultz air on the radio that, "one was out of the

---

[67] Pl. App. 106-07; R. Doc. 36-10 at 24-5.
[68] Pl. App. 106-07; R. Doc. 36-10 at 24-5.
[69] Pl. App. 106-07; R. Doc. 36-10 at 24-5.
[70] Pl. App. 106-07; R. Doc. 36-10 at 24-5.
[71] Pl. App. 947-65; R. Doc. 36-10 at 865-883; P. App. 1275; R. Doc. 41-1 at 28.
[72] Pl. App. 947-65; R. Doc. 36-10 at 865-883; P. App. 1275; R. Doc. 41-1 at 28.
[73] Pl. App. 947-65; R. Doc. 36-10 at 865-883; P. App. 1275; R. Doc. 41-1 at 28.
[74] Pl. App. 947-65; R. Doc. 36-10 at 865-883; P. App. 1275; R. Doc. 41-1 at 28.

Appellate Case: 22-2818    Page: 15    Date Filed: 10/19/2022 Entry ID: 5209210

vehicle."[75] Defendant Stariha parked behind Defendant Schultz's Richfield squad and got out of his car.[76]

Defendant Stariha heard Defendant Pedersen air on the radio, "Drop the knife! Drop the knife! Drop the knife!" and heard Defendant Pedersen yelling the same as he approached.[77] Defendant Stariha unholstered his gun and ran toward Defendant Pedersen.[78] Defendant Pedersen had Decedent at gun point in the street; Decedent was circling and moving laterally.[79] Decedent went onto the median between lanes of traffic and Defendant Stariha continued to approach - twice saying, "Let me see your hands."[80] Defendant Stariha alleges he saw Decedent holding a silver knife in his right hand.[81] Decedent turned back toward Defendants Pedersen and Schultz as the distance between Decedent and Defendant Schultz narrowed.[82]

Defendant Stariha fired a total of five shots at Decedent at this time.[83] Decedent came back onto the median from the westbound lane of traffic and

---

[75] Pl. App. 947-65; R. Doc. 36-10 at 865-883; P. App. 1275; R. Doc. 41-1 at 28.
[76] Pl. App. 947-65; R. Doc. 36-10 at 865-883; P. App. 1275; R. Doc. 41-1 at 28.
[77] Pl. App. 947-65; R. Doc. 36-10 at 865-883; P. App. 1275; R. Doc. 41-1 at 28.
[78] Pl. App. 947-65; R. Doc. 36-10 at 865-883; P. App. 1275; R. Doc. 41-1 at 28.
[79] Pl. App. 947-65; R. Doc. 36-10 at 865-883; P. App. 1275; R. Doc. 41-1 at 28.
[80] Pl. App. 947-65; R. Doc. 36-10 at 865-883; P. App. 1275; R. Doc. 41-1 at 28.
[81] Pl. App. 947-65; R. Doc. 36-10 at 865-883; P. App. 1275; R. Doc. 41-1 at 28.
[82] Pl. App. 947-65; R. Doc. 36-10 at 865-883; P. App. 1275; R. Doc. 41-1 at 28.
[83] Pl. App. 947-65; R. Doc. 36-10 at 865-883; P. App. 1275; R. Doc. 41-1 at 28.

Defendant Stariha saw another officer, Defendant Carroll from Richfield, to his right and within five to ten feet of Decedent.[84]

Defendant Stariha claims he saw Decedent raise his arms toward his midsection and drop his head.[85] Defendant Stariha then fired three more times for a total of eight shots.[86]

## Defendant Carroll

Defendant Carroll arrived near the intersection of 77th St. E. and Chicago Ave S. and heard over the radio, "Drop the knife, drop the knife!"[87] He observed the pursued vehicle and an Edina police squad pulled over and stopped, and a mixed race individual in dark clothing moving around 77th St. E. where both vehicles had stopped.[88] Defendant Carroll parked his police squad approximately 15-20 feet behind the pursued vehicle.[89]

Defendant Carroll exited his police squad and again heard commands by an officer to drop the knife.[90] As Defendant Carroll approached Decedent and Defendant Pedersen, he observed Decedent run onto the west bound lane of 77th St

---

[84] Pl. App. 947-65; R. Doc. 36-10 at 865-883; P. App. 1275; R. Doc. 41-1 at 28.
[85] Pl. App. 947-65; R. Doc. 36-10 at 865-883, P. App. 1275; R. Doc. 41-1 at 28; Pl. App. 81 at 03:45-:47; R. Doc. 36-2 at 03:45-:47; Pl. App. 1111 at 03:45-:47; R. Doc. 36-19 at 03:45-:47.
[86] Pl. App. 1275; R. Doc. 41-1 at 28.
[87] Pl. App. 684-99; R. Doc. 36-10 at 602-617.
[88] Pl. App. 684-99; R. Doc. 36-10 at 602-617.
[89] Pl. App. 684-99; R. Doc. 36-10 at 602-617.
[90] Pl. App. 684-99; R. Doc. 36-10 at 602-617.

Appellate Case: 22-2818    Page: 17    Date Filed: 10/19/2022 Entry ID: 5209210

E.[91] Defendant Carroll was approximately 20 feet from Decedent and they were now facing each other.[92] Decedent was sweaty and appeared incoherent and uttered or yelled unintelligently at him.[93] Defendant Carroll participated in the second round of gun fire but not the first. *Id.*

### C. Defendant Officers Failed to Abide by their own Policies.

The individual Defendants did not take steps to de-escalate the incident, including but not limited to the following:

- Placing barriers between an uncooperative subject and an officer

- Containing a threat

- Moving from a position that exposes officers to potential threats to a safer position

- Decreasing the exposure to potential threat by using: Back-up, distance/time, cover/concealment

- Communication from a safe position intended to gain the subject's compliance, using dialogue.[94]

---

[91] Pl. App. 684-99; R. Doc. 36-10 at 602-617.
[92] Pl. App. 684-99; R. Doc. 36-10 at 602-617.
[93] Pl. App. 684-99; R. Doc. 36-10 at 602-617.
[94] Pl. App. 1280; R. Doc. 41-1 at 33.

Appellate Case: 22-2818   Page: 18   Date Filed: 10/19/2022 Entry ID: 5209210

Per Richfield Police Department policy, "… the number of officers on scene may increase the available force options and may increase the ability to reduce the overall force used."[95] At the time of the shooting, there were five officers on scene.[96]

Edina Police Department policy regarding use of force provides:

> Department members are authorized to use reasonable force only when necessary and when in compliance with Minnesota State Statutes. While the use of reasonable force may be necessary in certain situations, force should not be used unless other reasonable alternatives have been exhausted or are not feasible for the situation. Elements to be considered include, but are not limited to:
> a) Nature of the offense.
> b) The behavior and capabilities of the subject against whom the force is to be used.
> c) Actions of third parties who may be present.
> d) Physical conditions existing at the time.
> e) Feasibility or availability of alternative actions.[97]

Defendant Edina Officers did not consider the nature of the offense, the behavior and capabilities of Decedent, or the feasibility or availability of alternative actions before they summarily elected to shoot at Decedent in the less than twenty

---

[95] Pl. App. 1280; R. Doc. 41-1 at 33.
[96] Pl. App. 81 at 03:33-:54; R. Doc. 36-2 at 03:33-:54; Pl. App. 1111 at 03:33-:54; R. Doc. 36-19 at 03:33-:54; Pl. App. 80 at 06:38-07:03; R. Doc. 36-1 at 06:38-07:03; Pl. App. 1112 at 06:38-07:03; R. Doc. 36-22 at 06:38-07:03.
[97] Pl. App. 1271; R. Doc. 41-1 at 24.

14

seconds between when Decedent exited his vehicle and when he was shot by officers.[98]

Defendants are also required to follow a continuum of force policy per both Defendant Cities' policies, along with standard law enforcement practices.



*Figure 1. Use of Force Continuum Diagram reflecting Department of Justice policies and other law enforcement agency best practices.*[99]

Law enforcement agency best practices also provide the following:

> Responsible agencies should properly train officers to treat each encounter "on its own unique facts" – and minimally, to apply six generalized principles.
> 1) **Time** (try to buy it, often through communication),
> 2) **Distance** (try to get it, even if it means backing up),
> 3) **Cover** (try to take it), containment (try to keep the situation from spreading),
> 4) **Communication** (focusing on verbal de-escalation with the subject)

---

[98] Pl. App. 81 at 03:33-:54; R. Doc. 36-2 at 03:33-:54; Pl. App. 1111 at 03:33-:54; R. Doc. 36-19 at 03:33-:54; Pl. App. 80 at 06:38-07:03; R. Doc. 36-1 at 06:38-07:03; Pl. App. 1112 at 06:38-07:03; R. Doc. 36-22 at 06:38-07:03.
[99] Pl. App. 1259; R. Doc. 41-1 at 12.

Appellate Case: 22-2818    Page: 20    Date Filed: 10/19/2022 Entry ID: 5209210

**5) Teamwork** (working with fellow officers). [100]

## Procedural History

Decedent's widow was appointed Trustee of Decedent by the Hennepin County, Minnesota, District Court. After being appointed, Plaintiff filed this action in the District Court alleging a deprivation of Decedent's civil rights.[101] After extensive discovery, all Defendants filed motions for summary judgment alleging that the officers were entitled to qualified immunity.[102] Plaintiff responded to the motion arguing that qualified immunity did not apply and that Minnesota police officers are subject to a heightened standard.[103] Defendants replied to the response arguing that none of Plaintiff's arguments warranted a finding that qualified immunity did not apply.[104]

A remote motion hearing was held on February 7, 2022, before the Honorable Patrick J. Schiltz.[105] The District Court granted Defendants' motions for summary judgment on July 26, 2022.[106] Judgment was filed the next day.[107]

This appeal follows.

---

[100] Pl. App. 1265; R. Doc. 41-1, at 18 (emphasis in original).
[101] Pl. App. 9; R. Doc. 1.
[102] Pl. App. 33; R. Doc. 27; Pl. App. 34-35; R. Doc. 33.
[103] Pl. App. 36-79; R. Doc. 41.
[104] Pl. App. 7; R. Doc. 43-44.
[105] Pl. App. 1296; R. Doc. 45.
[106] Pl. App. 1345-1365; R. Doc. 50.
[107] Pl. App. 1366; R. Doc. 51.

16

## SUMMARY OF ARGUMENT

The District Court erred in determining that the higher burden of proof that Minnesota applies to qualified immunity did not apply in this §1983 action. Additionally, because the District Court made a finding of fact that Decedent was mentally unbalanced, a determination reserved for the factfinder, at the time of the seizure, Ludwig controls and the District Court erred in its analysis of the actions taken by the individual Defendants that evening. Therefore, this case should be REVERSED and REMANDED to the District Court with instruction to set this case for trial.

## ARGUMENT

### I.     Standard of Review

In order to breach qualified immunity, the Appellant must show that the officers' conduct "violate clearly established statutory or constitutional rights of which a reasonable person would have known."[108] To defeat the motion for summary judgment, Appellant must "plead[] sufficient facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[109] This Court has acknowledged that "[t]he Supreme Court 'has repeatedly told courts … not to define clearly

---

[108] Harlow v. Fitzgerald, 457 U.S. 800 (1982).
[109] Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011).

Appellate Case: 22-2818     Page: 22     Date Filed: 10/19/2022 Entry ID: 5209210

established law at a high level of generality.'"[110] Instead, this Court searches for "a controlling case or 'a robust consensus of cases of persuasive authority.' … There need not be a prior case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'"[111]

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[112] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[113] "The determination of whether an officer is entitled to qualified immunity requires consideration of the 'objective legal reasonableness' of the officer's conduct in light of the information he possessed at the time of the alleged violation."[114] In order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."[115]. Qualified immunity is a question of law for the Court to decide.[116]

---

[110] Dillard v. O'Kelly, 961 F.3d 1048, 1052 (8th Cir. 2020).
[111] Dillard v. O'Kelly, 961 F.3d 1048, 1052 (8th Cir. 2020).
[112] Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).
[113] White v. Pauly, 137 S. Ct. 548, 551 (2017) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)).
[114] Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982)).
[115] White v. Pauly, 137 S. Ct. 548, 551 (2017)
[116] Littrell v. Franklin, 388 F.3d 578, 584–85 (8th Cir. 2004).

Appellate Case: 22-2818    Page: 23    Date Filed: 10/19/2022 Entry ID: 5209210

## II. If the acts of the police officers satisfied the criminal burden, then it must have satisfied the civil burden.

The District Court gave short shrift to Appellant's argument that Minnesota had acted to protect its citizenry from the abuses of unfettered state actors. The District Court noted, in a footnote, that "whether an officer is subject to *criminal* liability under *state* law has little bearing on whether an officer is subject to *civil* liability under *federal* law. The legal standards differ significantly."[117] Unfortunately, the District Court failed to acknowledge the sea change following the racial reckoning across the country along with the various laws that states, including Minnesota, have passed in the wake of the actions causing that reckoning. Additionally, by failing to consider the changes in Minnesota's legal landscape, the District Court failed to account for a change of law that dictates the outcome of this case. In that respect, the Minnesota change is analogous to one that occurs after judgment is entered and during the appellate process. In that case, "the law must be obeyed, or its obligation denied … In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of the law, the judgment must be set aside."[118]

---

[117] Add. at 19 n.8. The Court should note neither Appellees' addressed this argument in their respective reply briefs before the District Court.

[118] <u>Carpenter v. Wabash Ry. Co.</u>, 309 U.S. 23, 27 (1940) (citation omitted).

Appellate Case: 22-2818     Page: 24     Date Filed: 10/19/2022 Entry ID: 5209210

While "[p]ublic officials are [generally] immune from suit under 42 U.S.C. §1983 unless they have 'violated a statutory or constitutional right that was clearly established at the time of the challenged conduct",[119] none of the individual Defendants are entitled to this immunity under Minnesota law under these circumstances. That is because Minnesota has imposed a higher standard on law enforcement officers than is known in most other American jurisdictions. This new standard changes the previously acceptable responses of law enforcement and deems their transgressions potentially criminal, not merely potentially civil. For example, Mohamed Noor's discharge of his firearm, which previously would have been protected by qualified immunity, resulted in him being criminally prosecuted.[120] Essentially, Minnesota created a higher standard through the criminal conviction of Mohamed Noor (five months prior to the shooting of Decedent) that renders law enforcement criminally liable for deadly use of force. This is bolstered by the subsequent convictions of Derek Chauvin and Kim Potter.[121]

Much of rest of the country may recognize the more forgiving standard, but Minnesota chose, after the Philando Castile tragedy, to depart from that standard and

---

[119] City & Cty. of San Francisco v. Sheehan, 135 S. Ct. 1765, 1774 (2015) (quoting Plumhoff v. Rickard, 134 S.Ct. 2012, 2023 (2014)).

[120] State of Minnesota v. Noor, Henn. Cty. Dist. Ct. no. 27-CR-18-6859.

[121] United States v. Chauvin, D. Minn. 21-CR-108; State v. Potter, Henn. Cty. Dist. Ct. Case No. 27-CR-21-7460.

Appellate Case: 22-2818    Page: 25    Date Filed: 10/19/2022 Entry ID: 5209210

require more from the peace officers, such as the individual Defendants, who are charged with serving and protecting the public.

### How did Minnesota adopt the new standard?

Before 2016, there is little dispute that the traditional standard of qualified immunity governed Minnesota police officers. In July 2016, Philando Castile was murdered by former St. Anthony police officer Jeronimo Yanez.[122] In that case, the Ramsey County Attorney's Office chose to charge Yanez with manslaughter and reckless discharge of a firearm.[123] Upon those charges, a jury acquitted Officer Yanez.[124] After the anguished plea of Philando Castile's uncle, Clarence Castile, on CNN, the sea rose, and the change began.[125]

Almost one year later, on July 15, 2017, Mohamed Noor fatally shot and killed Justine Ruszcyk during a traffic stop. An investigation immediately commenced,

---

[122] "Two Minnesota police shooting trials, two very different verdicts." Jon Collins & Riham Feshir, Minn. Public Radio News, May 1, 2019 (available at: https://www.mprnews.org/story/2019/05/01/two-minnesota-police-shooting-trials-two-very-different-verdicts ) (last accessed Oct. 15, 2022).

[123] "Two Minnesota police shooting trials, two very different verdicts." Jon Collins & Riham Feshir, Minn. Public Radio News, May 1, 2019. (available at: https://www.mprnews.org/story/2019/05/01/two-minnesota-police-shooting-trials-two-very-different-verdicts ) (last accessed Oct. 15, 2022).

[124] "Two Minnesota police shooting trials, two very different verdicts." Jon Collins & Riham Feshir, Minn. Public Radio News, May 1, 2019. (available at: https://www.mprnews.org/story/2019/05/01/two-minnesota-police-shooting-trials-two-very-different-verdicts ) (last accessed Oct. 15, 2022).

[125] "Philando Castile's mom: 'We are being hunted' by police." CNN, Jul. 7, 2016, (available at: https://www.youtube.com/watch?v=ZuhbAZ6hlH4 (last accessed Oct. 15, 2022).

21

this time with the early involvement of the Hennepin County Attorney's Office, and the State charged Noor with second- and third-degree murder, as well as second-degree manslaughter.[126] Previously, Noor would have been protected by qualified immunity. However, the Hennepin County Attorney's Office not only charged Noor, but also asserted that the phrase "'20/20 hindsight' is actually a pejorative phrase for the evaluation of one's conduct after the fact. … More to the point, … What the legislature has enacted into law takes precedence over opinions written by federal courts in civil officer misconduct cases."[127] Noor was convicted of these crimes, except for the second-degree murder charge, on April 30, 2019. While the Minnesota Supreme Court did reverse the third-degree murder conviction against Noor, it did not do so on any ground that touches this case.[128] As this happened in Hennepin County, the same county that Defendants are in, the Defendants in this case were reasonably on notice that this expansion of rights of Minnesota citizens, regarding protection against unreasonable Fourth Amendment violations, was taking place.

### Application of the new standard

---

[126] "Two Minnesota police shooting trials, two very different verdicts." Jon Collins & Riham Feshir, Minn. Public Radio News, May 1, 2019. (available at: https://www.mprnews.org/story/2019/05/01/two-minnesota-police-shooting-trials-two-very-different-verdicts ) (last accessed Oct. 15, 2022).

[127] State v. Noor, Henn. Cty. Dist. Ct. 27-CV-18-6859.

[128] See State v. Noor, 964 N.W.2d 424 (2021).

Appellate Case: 22-2818     Page: 27     Date Filed: 10/19/2022 Entry ID: 5209210

This expansion of the rights of Minnesota citizens has been reinforced by the convictions of Derek Chauvin, Kim Potter, and the pending charges against Thomas Lane, J. Alexander Kueng, and Tou Thao.[129] This right, that officers reasonably knew about before murdering the Decedent, was subsequently codified by the Minnesota Legislature.[130] Indeed, even the late Pete Orput, former Washington County Attorney, stated that he felt "[a] lot of us started to question: Is there this blue line or something that we just can't go over? And then [Hennepin County Attorney] Mike Freeman took this one and he convicted him, … That tells us no, we can still seek justice when a cop commits some kind of gross malfeasance."[131]

### **What is the new Minnesota standard?**

In June 2020, the Minnesota Legislature codified the new standard that arose because of the previous state sanctioned deaths of Black and brown people by the armed posses comprising Minnesota's various police agencies.

The Minnesota Legislature forbade law enforcement agencies from providing training that seeks to "dehumanize[e] people or encourages aggressive conduct by peace officers during encounters with others in a manner that

---

[129] *See, e.g.,* State v. Chauvin, Henn. Cty. Dist. Ct. File No. 27-CR-20-12646.
[130] Minn. Stat. §609.066, subd. 1a.
[131] "Two Minnesota police shooting trials, two very different verdicts." Jon Collins & Riham Feshir, Minn. Public Radio News, May 1, 2019. (available at: https://www.mprnews.org/story/2019/05/01/two-minnesota-police-shooting-trials-two-very-different-verdicts ) (last accessed Oct. 15, 2022).

deemphasizes the value of human life or constitutional rights, the result of which increases a peace officer's likelihood or willingness to use deadly force."[132]

The type of training the individual Defendants received is appropriately categorized as "warrior-style training".[133] Such training emphasized "dehumanizing people or encourag[ing] aggressive conduct by peace officers during encounters with others in a manner that deemphasizes the value of human life or constitutional rights, the result of which increases a peace officer's likelihood or willingness to use deadly force."[134] The Minnesota Legislature decreed that "[a] law enforcement agency may not provide warrior-style training, directly or through a third-party, to a peace officer."[135]

As Justice Sotomayor correctly recognized in another case discussing the appropriateness of qualified immunity, as in this District Court decision, "is not just wrong on the law; it also sends an alarming signal to law enforcement officers and the public. It tells officers that they can shoot first and think later, and it tells the public that palpably unreasonable conduct will go unpunished."[136] Further, the District Court opinion callously disregards the heightened standards that Minnesota finally demands of its police officers.

---

[132] Minn. Stat. §626.8434, subd. 1 (2020).
[133] Minn. Stat. §626.8434, subd. 1 (2020).
[134] Minn. Stat. §626.8434, subd. 1 (2020).
[135] Minn. Stat. §626.8434, subd. 3 (2020).
[136] Kisela v. Hughes, 138 S. Ct. 1148, 1162 (2018) (Sotomayor, J., dissenting).

24

The District Court held that "[Appellant] points to a 'twenty-one-foot rule' that she says the officers violated. … Whatever merit that may have as a matter of policy, no case holds that it is compelled by the United States Constitution."[137] Once again, the District Court is only partially correct. This Court has previously held that, "[a]lthough these 'police department guidelines do not create a constitutional right,' … they are relevant to the analysis of constitutionally excessive force."[138]

This Court has also recognized that officers are generally required to give a warning of intent to use deadly force before employing such force.[139] Here, no such warning of the impending use of lethal force can be heard on any recording.[140] As in Ludwig, while "[t]he absence of a final warning does not 'automatically render [an officer's] use of deadly force constitutionally unreasonable'. … However, when combined, as here, with a potentially unconstitutional application of deadly force, the failure of [the officers] to warn

---

[137] Add. at 18 n.7.

[138] Ludwig v. Anderson, 54 F.3d 465, 472 (8th Cir. 1995) (internal citation omitted).

[139] Ludwig v. Anderson, 54 F.3d 465, 474 (8th Cir. 1995) (citing Tennessee v. Garner, 471 U.S. 1, 11-12 (1985)).

[140] Pl. App. 80; R. Doc. 36-1; Pl. App. 81; R. Doc. 36-2; Pl. App. 82; R. Doc. 36-9; Pl. App. 1111; R. Doc. 36-19; Pl. App. 1112; R. Doc. 36-22.

Appellate Case: 22-2818     Page: 30     Date Filed: 10/19/2022 Entry ID: 5209210

[Appellant] serves only to exacerbate the circumstances."[141] Indeed, the Eighth Circuit's Model Civil Jury Instructions also recognize this duty.[142]

In sum, Appellant recognizes that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[143] Here, the individual Defendants are, and did, both. They callously disregarded the Decedent's right to his life and sentenced him to death for a series of traffic infractions. As with other enactments, once a State creates a higher standard than the Federal government requires, the courts should apply the higher standard.[144] As the Supreme Court said almost forty years ago:

> It cannot be said that there is a constant or overwhelming trend away from the common-law rule. In recent years, some States have reviewed their laws and expressly rejected abandonment of common-law rule. Nonetheless, the long-term movement has been away from the rule that deadly force may be used against any fleeing felon, and that remains the rule in less than half the States.[145]

III. **If the District Court believed that Decedent was mentally troubled, then the District Court erred in its analysis of the Appellees' conduct that night.**

---

[141] Ludwig v. Anderson, 54 F.3d 465, 474 (8th Cir. 1995) (internal citation omitted).

[142] Model Civ. Jury Instr. 8th Cir. 4.40 (2018).

[143] White v. Pauly, 580 U.S. 73, 81 (2017).

[144] *See, e.g.*, 25 U.S.C. §1921.

[145] Tennessee v. Garner, 471 U.S. 1, 18 (1985).

26

Assuming, *arguendo*, the Defendants' theory that Decedent was looking for a "suicide by cop", which the District Court seems to have believed,[146] the Minnesota Legislature demands officers "exercise special care when interacting with individuals with …mental health…disabilities as an individual's disability may affect the individual's ability to understand or comply with commands from peace officers."[147]

Aside from the relevant Minnesota statute, this Court has spoken clearly to the issue of a potential §1983 violation when a person is considered mentally ill.[148] As applied to this case, this does not mean that Decedent's "status as an emotionally disturbed person entitles him to any additional, clearly established constitutional rights which would be relevant to the qualified immunity determination. Rather, [Decedent's] emotionally disturbed status may be relevant to the trial court's determination of objective reasonableness in the substantive portion of this trial."[149] As in Ludwig, the factual similarities here, including the "number of officers present, the factual inconsistencies about what the officers knew and who was endangered at the time of the shooting, as well as [his] expert's affidavit," should cause this Court

---

[146] Add. at 1.

[147] Minn. Stat. §609.066, subd. 1a(4) (2020).

[148] Ludwig v. Anderson, 54 F.3d 465 (8th Cir. 1995).

[149] Ludwig v. Anderson, 54 F.3d 465, 472 (8th Cir. 1995) (internal citation omitted).

27

to determine "that material issues of fact remain as to whether [Appellant] posed a risk such that his flight required apprehension by deadly force."[150]

In <u>Ludwig</u>, this Court held that:

> We disagree with the district court's conclusion that 'whether Ludwig was emotionally disturbed is not material to the reasonableness of the officers' actions,' for the following reasons: (1) defense counsel concedes that Ludwig was emotionally disturbed; (2) both Anderson and Strong had been trained in the detection and handling of emotionally disturbed persons; and (3) standard police procedure regarding emotionally disturbed persons differs greatly from that regarding emotionally stable persons.[151]

The District Court's factual determination that the Decedent was attempting to commit "suicide by cop" and was emotionally or mentally unbalanced creates a question of fact that must be resolved by the factfinder at trial and not on a motion for summary judgment.

Another point was raised as to the level of competence in Plaintiff's filings at the District Court, a question that should be addressed by a factfinder in a trial court. Defendants' actions were reckless and inconsistent with standard police training and procedures as it pertains to properly responding to a person they believed possessed a knife and believed was emotionally disturbed. For example, basic law enforcement

---

[150] <u>Ludwig v. Anderson</u>, 54 F.3d 465, 474 (8th Cir. 1995) (internal citation omitted).
[151] <u>Ludwig v. Anderson</u>, 54 F.3d 465, 472 (8th Cir. 1995) (internal citation omitted).

training at the technical college level involves teaching prospective peace officers to create distance and cover when responding to an individual with a knife. Defendant Pedersen claimed he saw Decedent holding a knife in his hand, with the blade pointed up. Defendant Pedersen and other officers drew their weapon, and pursued on foot, Decedent – subsequently closing distance rather than exhaust other reasonable alternatives such as create distance, take cover, wait for back-up, and engage in de-escalation tactics.[152] Defendant officers did not consider reasonable alternative actions prior to jumping out of their vehicles and moving towards the suspect immediately with their guns drawn in what officers later asserted was a felony stop.[153] Defendant officers did not take the appropriate cover that law enforcement training requires law enforcement officers to take in the event of a felony stop.[154] The trial court erred in not allowing a fact finder at trial to consider if this failure exhibited plain incompetence on the part of the responding officers.

## CONCLUSION

"Like sands through the hourglass, so are the days of our lives." The Decedent was the single grain of sand in the hourglass, and his life did indeed past swiftly through. Unfortunately, that was not because of time but rather the hands and guns

---

[152] Pl. App. 1283; R. Doc. 41-1, at 37.
[153] Pl. App. 977; R. Doc. 36-10, at 895.
[154] Pl. App. 1282, 1284; R. Doc. 41-1, 36, 38; Pl. App. 81 at 03:33-:54; R. Doc. 36-2 at 03:33-:54; Pl. App. 1111 at 03:33-:54, R. Doc. 36-19 at 03:33-:54.

Appellate Case: 22-2818    Page: 34    Date Filed: 10/19/2022 Entry ID: 5209210

of the Edina and Richfield officers on the scene that night. They chose to take the life of a brown person by callously disregarding his rights, his actions, and those officers should be held accountable for that neglect based on their well-known obligations under the revised Minnesota standards applicable to police officers in a potential deadly force situation.

In consideration of the foregoing, Appellant requests this Honorable Court REVERSE the decision of the District Court and REMAND this case to the District Court for action not inconsistent with this Court's decision.

Appellate Case: 22-2818    Page: 35    Date Filed: 10/19/2022 Entry ID: 5209210

Dated: <u>October 16, 2022</u>                    Respectfully submitted,
                                                  FRANCIS WHITE LAW, PLLC
                                                  ATTORNEYS FOR APPELLANT


                                                  <u>*/s/Brian K. Lewis*          </u>
                                                  BY: Brian K. Lewis, (#18-0193)
                                                  Francis H. White, III, (#19-0201)
                                                  8362 Tamarack Village,
                                                  Suite 119-220
                                                  Woodbury, Minnesota 55125
                                                  Tel: (651) 829-1503
                                                       (651) 829-1431
                                                  Fax: (651) 714-7119
                                                  brian.lewis@franciswhitelaw.com
                                                  francis.white@franciswhitelaw.com

Appellate Case: 22-2818    Page: 36    Date Filed: 10/19/2022 Entry ID: 5209210

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32

The undersigned counsel of record hereby certifies, pursuant to Fed. R. App. P. 32(g), that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 7,085 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14.

Dated: <u>October 16, 2022</u>      <u>*/s/Brian K. Lewis*   </u>
               Brian K. Lewis (#18-0193)

Appellate Case: 22-2818 Page: 37 Date Filed: 10/19/2022 Entry ID: 5209210

## **CERTIFICATE OF VIRUS FREE**

Pursuant to Local Rule 28A(h)(2) of the Eighth Circuit Rules of Appellate Procedure, the undersigned counsel hereby certifies that this brief has been scanned for computer viruses and is virus free.

Dated: <u>October 16, 2022</u>

<u>*s/Brian K. Lewis*</u>
Brian K. Lewis (#18-0193)

Appellate Case: 22-2818    Page: 38    Date Filed: 10/19/2022 Entry ID: 5209210