No. 22-2818

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

_____

Ashley Quinones, as Trustee for
Brian Jesus Quinones-Rosario,

Appellant,

vs.

City of Edina, Minnesota, City of Richfield, Minnesota,
Nicholas Pedersen, Benjamin Wenande,
Joseph Carroll, Macabe Stariha, Dylan Schultz; all individuals being
sued in their individual and official capacity,

Appellees.

_____

On Appeal from the United States District Court
For the District of Minnesota
Case No. 20-cv-1329-PJS/BRT
_____

**BRIEF OF APPELLEES**
**CITY OF EDINA, NICHOLAS PEDERSEN AND BENJAMIN WENANDE**
_____

JARDINE, LOGAN & O'BRIEN, P.L.L.P.
Joseph E. Flynn, #165712
Patrick S. Collins, #0302557
8519 Eagle Point Boulevard, Suite 100
Lake Elmo, MN 55042
Phone: 651-290-6500
Fax: 651-223-5070
jflynn@jlolaw.com
pcollins@jlolaw.com

*Attorneys for Defendants - Appellees –*
*City of Edina, Nicholas Pedersen and*
*Benjamin Wenande*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Ashley Quinones, as Trustee of the Next of Kin of Brian Jesus Quinones-Rosario (the "Trustee") presents novel arguments and arguments previously rejected by this Court in her appeal to overturn the district court's decision to grant qualified immunity for Eagan Police Officers Nicholas Pedersen ("Pedersen") and Benjamin Wenande ("Wenande"). No matter how one would describe the Trustee's arguments, the result is the same - the Trustee's arguments are fatally flawed and the district court's decision must be affirmed.

The district court did not err when: 1) Not applying an alleged new qualified immunity standard allegedly established in a Minnesota state criminal case; 2) Rejecting the Trustee's claim that Pedersen and Wenande allegedly violated the twenty-one-foot rule, because that rule does not create a legal right; 3) Not allowing Decedent Brian Quinones' ("Quinones") alleged mental status to change the qualified immunity analysis, because his alleged mental status does not confer additional rights upon Quinones and it does not change that Quinones was a deadly threat; 3) Not considering, or allowing a jury to consider, whether officers should have used alternative actions before using deadly force; and 4) By pointing their guns at Quinones and repeatedly ordering him to drop his knife, Pedersen and Wenande provided warnings to Quinones before deadly force was use.

Thirty minutes of oral argument are requested.

i

# TABLE OF CONTENTS

Summary of the Case and Statement Regarding Oral Argument ............................i

Table of Contents ................................................................. ii

Table of Authorities ............................................................ iv

JURISDICTIONAL STATEMENT .........................................................1

STATEMENT OF LEGAL ISSUES ........................................................2

STATEMENT OF THE CASE AND UNDISPUTED FACTS .......................................5

SUMMARY OF ARGUMENT .............................................................18

ARGUMENT ........................................................................18

I.   STANDARD OF REVIEW .........................................................18

II.  THE TRUSTEE WAIVED CLAIMS AND ISSUES .......................................19

III. THE COURT CANNOT ADOPT THE TRUSTEE'S VERSION OF FACTS THAT ARE CONTRADICTED BY VIDEO EVIDENCE ..........22

IV.  THE DISTRICT COURT APPLIED THE CORRECT QUALIFIED IMMUNITY STANDARD WHEN GRANTING QUALIFIED IMMUNITY TO OFFICERS PEDERSEN AND WENANDE ..................22

     A.   Qualified Immunity Cannot Be Defeated By A State Right .............23

     B.   The *Noor* State Criminal Case Could Not, And Did Not, Establish a New State Right or Higher Federal Standard For Qualified Immunity, and Even if it did, that Standard Was Not Clearly Established ...............................24

     C.   There is No New Standard in Minnesota .........................29

     D.   A New Right was Not Codified into Minnesota Statute Section 609.066 ...................................30

ii

Appellate Case: 22-2818     Page: 3     Date Filed: 11/21/2022 Entry ID: 5219512

V.      WARNINGS WERE PROVIDED BEFORE DEADLY FORCE
        WAS USED ...................................................................................33

VI.     THE DISTRICT COURT DID CONSIDER THE TRUSTEE'S
        TWENTY-ONE-FOOT RULE ARGUMENT IN ITS QUALIFIED
        IMMUNITY ANALYSIS AND REJECTED IT .........................................35

VII.    QUINONES' EMOTIONAL OR MENTAL STATUS WOULD NOT
        CHANGE THE QUALIFIED IMMUNITY ANALYSIS..........................38

VIII.   ALTERNATIVE ACTIONS ARE IRRELEVANT TO THE
        REASONABLENESS INQUIRY .................................................42

CONCLUSION.................................................................................44

Certificate of Compliance with FRAP 32(a)(7)(C) and Eighth Cir. R. 28A(h) ....45

Certificate of Service .........................................................................46

Appellate Case: 22-2818    Page: 4    Date Filed: 11/21/2022 Entry ID: 5219512

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton,* 483 U.S. 635 (1987) ..........................................28

*Ashcroft v. al-Kid*, 563 U. S. 731 (2011) ...............................................19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................. 37

*Brown v. Bloomington,* 280 F.Supp.2d 889 (D. Minn. 2003) ......................... 34, 35

*Carey v. Piphus*, 435 U.S. 247 (1978) ..................................................23

*Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2001) ...........................................28

*Christiansen v. Eral*,
    52 F.4th 377, 2022 WL 16546084 (8th Cir. Oct. 31,2022). ..................... 3, 36, 38

*City and County of San Francisco v. Sheehan*,
    575 U.S. 600 (2015) .......................................................................32

*Cole v. Bone*, 993 F.2d 1328 (8th Cir. 1993) ........................... 3, 4, 36, 37, 38 42, 43

*Davis v. Scherer*, 468 U.S. 183 (1984) ................................... 2, 23, 24, 31

*District of Columbia v. Wesby*, 138 S.Ct. 577 (2018) ...........................................19

*Edwards v. Baer*, 863 F.2d 606 (8th Cir. 1988)........................................ 23, 24, 31

*Elder v. Holloway*, 510 U.S. 510 (1994) ................................... 2, 24, 31

*Estate of Larsen v. Murr,* 2006 WL 322602 (D. Colo. Feb. 10, 2006) ..................36

*Estate of Morgan v. Cook*, 686 F.3d 494 (8th Cir. 2012) ....................................3, 33

*Fredrick v. Motsinger*, 873 F.3d 641 (8th Cir. 2017) ...........................................33

*Gainor v. Rogers*, 973 F.2d 1379 (8th Cir. 1992)....................................42

*Graham v. Connor*, 490 U.S. 386 (1989) ...............................................31

*Greiner v. City of Champlin*, 27 F.3d 1346 (8th Cir. 1994) ....................................19

*Hanson v. Best*, 915 F.3d 543 (8th Cir. 2019) ................................... 26, 28

iv

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................18

*Hassan v. City of Minneapolis*, 489 F.3d 914 (8th Cir. 2007)................ 3, 32, 39, 40

*Hayek v. City of St. Paul*, 488 F.3d 1049 (8th Cir. 2007)............................ 3, 32, 40

*Jasperson v. Purolator Courier Corp.*,
 765 F.2d 736 (8th Cir. 1985) .................................................... 2, 19, 21

*Kelsay v. Ernst*, 933 F.3d 975 (8th Cir. 2019)........................................... 26, 40, 44

*Kisela v. Hughes*, 138 S.Ct. 1148 (2018).......................................... 2, 3, 27, 28, 32

*Kong v. Burnsville*, 960 F.3d 985 (8th Cir. 2020) ............................................ 34, 35

*Lacross v. City of Duluth*, 713 F.3d 1155 (8th Cir. 2013)........................................18

*Lewis v. Burnsville*, 573 F.Supp.3d 1334 (D. Minn. 2021) ............................... 33, 34

*Ludwig v. Anderson*, 54 F.3d 465 (8th Cir. 1995) .............. 33, 34, 35, 39, 40, 41, 42

*Mann v. Yarnell*, 497 F.3d 822 (8th Cir. 2007) ................................................. 40, 44

*McKenney v. Harrison*, 635 F.3d 354 (8th Cir. 2011)............................ 4, 40, 43, 44

*Minnesota v. Noor*, Dist. Ct. File No. 27-CV-18-6859..............................................23

*Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978)............................................ 1

*Monroe v. Arkansas State University*, 495 F.3d 591 (8th Cir. 2007).........................26

*Mullenix v. Luna*, 136 S.Ct. 305 (2015) ....................................................... 26, 27, 28

*Pace v. Des Moines*, 201 F.3d 1050, 1056 (8th Cir. 2000) ......................... 40, 41, 44

*Pearson v. Callahan*, 555 U.S. 223 (2009)............................................. 2, 24, 26, 28

*Powell v. Shelton*, 2020 WL 6130741 ............................................................. 34, 35

*Ransom v. Grisafe*, 790 F.3d 804, 810 (8th Cir. 2015)............................................24

*Reichle v. Howards*,
 566 U.S. 658, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012)......................................19

*Sanders v. City of Minneapolis*, 474 F.3d 523 (8th Cir. 2007)............................3, 40

Appellate Case: 22-2818    Page: 6    Date Filed: 11/21/2022    Entry ID: 5219512

*Schultz v. Long*, 44 F.3d 643 (8th Cir. 1995).................................................. 4, 42, 43

*Scott v. Harris*, 550 U.S. 372 (2007) ........................................ 2, 19, 22, 41

*Smith v. City of Minneapolis*, 754 F.3d 541 (8th Cir. 2014)........................... 2, 26, 28

*Stanton v. Sims*, 571 U.S. 3, 5 (2013) .............................................................19

*State v. Noor*, 964 N.W.2d 424 (Minn. 2021) ....................................... 28

*Tennessee v. Garner*, 471 U.S. 1 (1985)........................................... 31, 43

*Turpin v. County of Rock*, 262 F.3d 779 (8th Cir. 2001).........................................28

*United States v. Azure*, 539 F.3d 904 (8th Cir. 2008).................................... 2, 19, 21

*United States v. Bazaldua*, 506 F.3d 671 (8th Cir. 2007).........................................8

*United States v. Chiquito*, 175 Fed. Appx. 215 (10th Cir. 2006) ...........................25

*Wallingford v. Olson,* 592 F.3d 888 (8th Cir. 2010)............................... 2, 19, 22, 41

*White v. Pauly*, 137 S.Ct. 548, 552 (2017) .............................................32

**Statutes**

Minnesota Statute § 609.066........................................................... 3, 23, 30, 31, 33

Minnesota Statute § 626.8434................................................................. 3, 23, 29, 30

**Other Authorities**

25 U.S.C. § 1921 ..............................................................................................23

28 U.S.C. § 1331 ................................................................................................1

28 U.S.C. § 1343 ................................................................................................1

42 U.S.C. § 1367................................................................................................1

42 U.S.C. § 1983 ............................................................................ 1, 18, 23, 37

42 U.S.C. § 1988................................................................................................1

Appellate Case: 22-2818     Page: 7     Date Filed: 11/21/2022 Entry ID: 5219512

# JURISDICTIONAL STATEMENT

Ashley Quinones, Trustee for Next-of-Kin of Brian Jesus Quinones-Rosario, (the "Trustee") commenced this action against Edina Officers Nicholas Pedersen ("Pedersen") and Benjamin Wenande ("Wenande"), Richfield Officers Joseph Carroll ("Carroll"), Macabe Stariha ("Stariha") and Dylan Schultz ("Schultz"), the City of Edina ("Edina") and the City of Richfield ("Richfield") under 42 U.S.C. § 1983 alleging: 1) violations of Brian Jesus Quinones-Rosario's ("Quinones") Fourth Amendment rights by allegedly unlawfully using deadly force; 2) failure to intervene; 3) failure to train; and 4) a *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978) claim. Further, the Trustee alleged state law claims for assault, battery, and negligence against Pedersen, Wenande, Carroll, Stariha and Schultz. *Appellant App. 9-32, R. Doc. 1, at 1-24*. The district court had jurisdiction over these claims pursuant to 42 U.S.C. §§ 1367, 1983 and 1988, along with 28 U.S.C. §§ 1331 and 1343. Defendants moved for summary judgment requesting dismissal of the Trustee's claims. *Appellant App. 33, R. Doc. 27 at 1*. On July 26, 2022, the district court granted summary judgment on the Trustee's federal claims and declined to exercise supplemental jurisdiction over the remaining state law claims. *Appellant App. 1345 - 1365*. The Trustee filed a Notice of Appeal on August 25, 2022. *Appellees App. 279, R. Doc. 52, at 1*.

1

# STATEMENT OF LEGAL ISSUES

**I.     Whether the Trustee Waived Claims and Issues?**

Apposite Legal Authority

*U.S. v. Azure,* 539 F.3d 904 (8th Cir. 2008)
*Jasperson v. Purolator Courier Corp.,* 765 F.2d 736 (8th Cir. 1985)

**II.     Whether the Court can Adopt the Trustee's Version of Facts that are Contradicted by Video Evidence?**

Apposite Legal Authority

*Scott v. Harris,* 550 U.S. 372 (2007)
*Wallingford v. Olson,* 592 F.3d 888 (8th Cir. 2010)

**III.     Whether the District Court Applied the Wrong Qualified Immunity Standard when Granting Officers Nicholas Pedersen and Benjamin Wenande Qualified Immunity?**

**A.     Qualified Immunity cannot be Defeated by a State Right.**

Apposite Legal Authority:

*Davis v. Scherer*, 468 U.S. 183 (1984)
*Elder v. Holloway*, 510 U.S. 510 (1994)

**B.     The *Noor* State Criminal Case Could Not, and Did Not, Establish a New Standard for Qualified Immunity, and even if it did, that standard was not Clearly Established.**

Apposite Legal Authority:

*Pearson v. Callahan*, 555 U.S. 223 (2009)
*Smith v. City of Minneapolis*, 754 F.3d 541 (8th Cir. 2014)
*Kisela v. Hughes*, 138 S.Ct. 1148 (2018)

2

**C.     There is No New Qualified Immunity Standard in Minnesota.**

Apposite Legal Authority:

Minnesota Statute § 626.8434
*Kisela v. Hughes*, 138 S.Ct. 1148 (2018)

**D.     A New State Right was Not Codified into Minnesota
        Statute Section 609.066?**

Apposite Legal Authority:

Minnesota Statute § 609.066

**II.    Whether Warnings were Provided before Deadly Force was Used?**

Apposite Legal Authority:

*Estate of Morgan v. Cook*, 686 F.3d 494 (8th Cir. 2012)

**III.   Whether the District Court Erred by Allegedly not Considering the
        Trustee's Argument that Pedersen and Wenande Violated the Twenty-
        One-Foot Rule when Conducting its Qualified Immunity Analysis.**

Apposite Legal Authority:

*Cole v. Bone*, 993 F.2d 1328 (8th Cir. 1993)
*Christiansen v. Eral*, 52 F.4th 377 (8th Cir. 2022)

**IV.    Whether the District Court Erred by not Considering Quinones' alleged
        Mental Illness when Granting Officers Nicholas Pedersen and Benjamin
        Wenande Qualified Immunity.**

Apposite Legal Authority:

*Hassan v. City of Minneapolis*, 489 F.3d 914 (8th Cir. 2007)
*Sanders v. City of Minneapolis*, 474 F.3d 523 (8th Cir. 2007)
*Hayek v. City of St. Paul*, 488 F.3d 1049 (8th Cir. 2007)

Appellate Case: 22-2818     Page: 10     Date Filed: 11/21/2022 Entry ID: 5219512

**V.** **Whether the District Court erred by Not Allowing a Jury to Consider Whether Pedersen and Wenande should have Used Alternative Actions before using Deadly Force.**

Apposite Legal Authority:

*Schultz v. Long*, 44 F.3d 643 (8th Cir. 1995)
*Cole v. Bone*, 993 F.2d 1328 (8th Cir. 1993)
*McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011)

Appellate Case: 22-2818   Page: 11   Date Filed: 11/21/2022 Entry ID: 5219512

## STATEMENT OF THE CASE AND UNDISPUTED FACTS.

Pedersen was on patrol on September 7, 2019 and was accompanied by a ride-along passenger, Heidi Lee, who is the Race and Equity Coordinator for Edina. *Appellant App. 1118, R. Doc. 37-5, at 27-28.* Around 10:15 p.m., Pedersen's squad was stopped at a stop light at the intersection of Normandale Frontage Road and 77th Street in Edina. *Appellant App. 1112, 1350, R. Doc. 36-22 at 0:28-31; Appellant App. 1119, 1123, R. Doc. 37-5, at 29, 47.*

A gray automobile driven by Quinones approached Pedersen's squad on the right side. *Appellant App. 1123, 1350, R. Doc. 36-22, at 0:28-31; Appellant App. 1123, R. Doc. 37-5, at 47.* Pedersen "saw [Quinones] turn right at a red light without stopping or signaling his turn." *Id.; Appellant App. 1348.* As a result, Pedersen began following Quinones' vehicle. *Appellant App. 1350, R. Doc. 36-22, at 0:33; Appellant App. 1127, R. Doc. 37-5, at 63.* As Pedersen followed Quinones, he noticed that Quinones was on his cell phone. *Appellant App. 1112,1350, R. Doc. 36-22, at 1:00-1:02; Appellant App. 1182, R. Doc. 37-5, Dep. Ex. 34, at 872.* In fact, from his phone, Quinones was live streaming the entire encounter with Pedersen on Facebook. *Appellant App. 82, 1347; R. Doc. 36-9, at 1.*

"After following [Quinones] for about a quarter of a mile at about 10 to 15 miles per hour above the speed limit, Pedersen turned on his squad car's

5

emergency lights (just after [Quinones] made another turn without signaling), and Pedersen turned on his siren after [Quinones] continued another block without stopping." *Appellant App. 1112, 1348 R. Doc. 36-22 at 1:23-1:40. Appellant App. 1126, 1130, R. Doc. 37-5, at 58-60, 75*.

"With [Quinones] refusing to stop, Pedersen began pursing him for committing the felony of fleeing a police officer in a motor vehicle." *Appellant App. 1348*

Wenande was on patrol and heard Pedersen air a traffic stop, which based on Wenande's experience, meant that Pedersen wanted assistance. A*ppellant App. 948-949, 1350, R. Doc. 36-10, at 865-866.* As a result, "Pedersen was joined by [Wenande], who activated his own emergency lights and drove toward Pedersen's location." *Appellant App. 950, 1349, R. Doc. 36-10, at 867; 1354, R. Doc. 36-23, at 0:34.* "Richfield Police Officers Macabe Stariha, Joseph Carroll, and Dylan Schultz, also joined the pursuit as it reached the City of Richfield's borders. *Appellant App. 669, 687-688, 703, R. Doc. 36-10, at 586, 604-605, 620.*

As Quinones' car crossed the intersection of 76th Street and Xerxes Avenue, he entered the City of Richfield. Pedersen continued to pursue Quinones' vehicle with lights and sirens activated, and in a 30-mph zone, Quinones increased his speed to 45 mph when going through the 76th and Washburn intersection and increased his speed up to 52 mph three blocks later when going through the 76th

6

and Thomas intersection. *Appellant App. 1347, Appellee App. 275, R. Doc. 36-8, at 1.*

When 76th Street turned into 77th Street, Pedersen indicated over the radio that he was waiting for another officer to join the pursuit so they could make a stop for felony fleeing a police officer. *Appellant App. 1201; R. Doc. 36-10, at 891.*

Just prior to the intersection of 77th Street and Portland Avenue, "[the Trustee] found [Quinones] and the squad cars pursuing him, all with lights and sirens activated. [The Trustee] passed Pedersen's squad car mid-pursuit…" *Appellant App. 1112, 1349, R. Doc. 36-22, at 6:03.*

The Trustee does not dispute any of her odd and illegal behavior. *Appellees App. 150, R. Doc. 37-4, at 95.* In fact, the Trustee admitted that while she was engaging in this illegal activity, the police were pursuing Quinones with their lights and sirens activated and Quinones was not pulling over. *Appellees App. 150, R. Doc. 37-4, at 95-96.*

Eventually, the Trustee had to brake "to avoid hitting vehicles stopped at a red light." *Appellant App. 1112, 1349, R. Doc. 36-22, at 6:12.* Unfortunately, Quinones "ran a red light, barely missing a car turning out of the cross-traffic." *Appellees App. 275, R. Doc. 36-8 at 1; Appellant App. 1134, 1349, R. Doc. 37-5, at 89.*

Appellate Case: 22-2818    Page: 14    Date Filed: 11/21/2022 Entry ID: 5219512

As a result, "Pedersen – after seeing [Quinones] recklessly drive through yet another red light and almost hit another car – attempted a PIT[1] maneuver to stop [Quinones]." *Appellant App. 1350, Appellees App. 275, R. Doc. 36-8, at 1.* Pederson attempted PIT maneuver "missed, but [Quinones] suddenly braked." *Appellees App. 275, R. Doc. 36-8, at 1; Appellant App. 1112, 1350, R. Doc. 39-22, at 6:32 - 6:34; Appellant App. 1134-1135, R. Doc. 37-5, at 91, 93.* "Pedersen also braked, stopping close to the front of [Quinones'] car. *Appellant App. 1112, 1350, R. Doc. 36-22, at 6:38; Appellant App. 1135, R. Doc. 37-5, at 93-94.*

As shown in the still frames on the next page, "[a]fter stopping, [Quinones] grabbed a large knife and got out of his car." *Appellant App. 1209, 1350, R. Doc. 37-6, at 6.[2]; Appellant App. 82, R. Doc. 36-9, at 12:07.*

---

[1] "This is a 'method used by police to force a pursued vehicle to abruptly turn sideways to the direction of travel, by bumping the back side of the pursued vehicle with the police vehicle, causing the fleeing driver to lose control and stop.'" *Appellant App. 1350 fnt. 4 (quoting United States v. Bazaldua,* 506 F.3d 671, 673 n.2 (8th Cir. 2007)).

[2] Expert Witness Leiloglou mirrored the Facebook Live video to show the correct hand that the knife was in when Brian exited his car.



"Pedersen got out of his squad car and drew his sidearm." *Appellant App. 1350.* "Brandishing the knife, [Quinones] advanced toward Pedersen, and Pedersen ordered [Quinones] to "[g]et on the ground!" *Appellant App. 1135-1136, 1350, R. Doc. 37-5, at 96-97; Appellant App. 1112, R. Doc. 36-22, at 6:40.* As shown in the still photograph on the next page, "[Quinones] did not comply; instead, Brian raised his knife above his shoulder while continuing to advance." *Id; Appellant App. 1137, R. Doc. 37-5, at 102.*

Appellate Case: 22-2818   Page: 16   Date Filed: 11/21/2022 Entry ID: 5219512



Knife
in
right
hand

"As [Quinones] advanced, Pedersen retreated, trying to maintain his distance from [Quinones]." *Appellant App. 1350.* "Pedersen mistakenly tried to report "he's got a gun!" but his radio did not transmit the statement." *Appellant App. 1112, 1351 R. Doc. 36-22, at 6:44-6:46; Appellant App. 1140, R. Doc. 37-5, at 115.* "Pedersen immediately corrected himself, announcing over the radio, 'He's got a knife,' and then repeatedly ordered [Quinones] to drop the knife." *Appellant App. 1351; Appellees App. 275, R. Doc. 36-8, at 1.* "Again, [Quinones] refused to comply." *Id.* As shown in the chronological still frames on the next page, Quinones "continued his advance, circling Pedersen and daring him, more than once, to "[d]o it!" *Appellant App. 1112, 1351, R. Doc. 36-22, at 6:44-6:53; Appellant App. 1137, 1141, R. Doc. 37-5, at 102, 117, 120.*

Appellate Case: 22-2818    Page: 17    Date Filed: 11/21/2022 Entry ID: 5219512



Pedersen believed Quinones was about to kill him. *Appellant App. 1137, 1199, R. Doc. 37-5, at 102 – 103, Depo Ex. 34, at 888.*

Next, Richfield Officers Macabe Stariha ("Stariha') and Dylan Schultz ("Schultz") "arrived at the scene. They both heard Pedersen's repeated commands to drop the knife, either over the radio or on scene." *Appellant App. 668-669, 689, 702, 1351, R. Doc. 36-10, at 585-86, 606, 619*; *Appellant App. 1111, R. Doc. 36-19, at 3:30-41; Appellees App. 277, R. Doc. 36-20, at 3:54.* "Stariha drew his sidearm soon after exiting his squad car." *Id.* Schultz saw Quinones get out of the

car and rapidly approach Pedersen with the knife. *Appellant App. 661, 702, 646, R. Doc. 36-10, at 586, 619, 621*; *Appellees App. 277, R. Doc. 36-20, at 4:00-06*.

Richfield Officer Joseph Carroll ("Caroll") arrived next, and he "also heard Pedersen shout 'drop it!' at least once, either over the radio or at the scene." *Appellant App. 1351; Appellees App. 9, R. Doc. 36-21, at 3:31-39*.

Schultz observed that Pedersen had Quinones at gunpoint as he backpedaled through the median attempting to create distance as Quinones advanced on him wielding a large knife. *Appellant App. 644, 646-647, R. Doc. 36-10, at 619, 621-22, Appellant App. 1111, R. Doc. 36-19, at 3:30-41*. Schultz feared for Officer Pedersen's life. *Appellant App. 646, R. Doc. 36-10, at 619*. With Pedersen holding Quinones at gunpoint, Schultz believed he had an opportunity to use his Taser. *Appellant App. 645, 647, 1351, R. Doc. 36-10, at 620, 622*. "Schultz began to approach Brian in order to use a Taser on him…" *Id*. As Quinones was circling Pedersen, Quinones' attention turned toward Pedersen's left where Schultz and Stariha were located. *Appellant App. 1142, R. Doc. 37-5, at 122; Appellant App. 962-963, R. Doc. 36-10, at 879-880*. Suddenly, "[Quinones] lunged toward Schultz and Pedersen while still holding the knife." *Appellant App. 1141, 1351, R. Doc. 37-5, 117-118; Appellant App. 1111, R. Doc. 36-19, at 3:41; Appellees App. 9, R. Doc. 36-21, at 3:38; Appellees App. 277, R. Doc. 36-20, at 4:05*.

Schultz "then shot his Taser, but [Quinones] continued to advance with the

knife; it is not clear whether the Taser bolt missed [Quinones] or whether it hit him but had no impact." *Appellant App. 1111, 1351, R. Doc. 36-19, at 3:41-47.* Believing Quinones was about to kill Schultz and Pedersen, "Pedersen and Stariha fired their weapons." *Appellant App. 1199, 1351, R. Doc. 37-5, at Ex. 34, p. 888; Appellant App. 669, 978, R. Doc. 36-10, at 586, 895.*

On the next page is a top view depiction of the positions of Quinones, along with Stariha, Schultz and Pedersen, at the time of the first shot was fired by Pedersen. *Appellant App. 1228, R. Doc. 37-6, at 25.*



One second before Pedersen fired his weapon, Quinones was approximately 19 feet away from Pederson. *Id., 1226, at 23.* At the point Pedersen fired his first shot, Quinones was 13.4 feet away from Pedersen and Quinones had increased his

13

foot speed from 5.5 mph to 7.4 mph.[3] *Id, 1226-1227, at 23, 24, 40.* One second after Pedersen fired his first shot, Quinones was approximately six feet away from Pedersen. *Id., at 23.* This is consistent with Pedersen's testimony that Quinones was running toward Pedersen, and Quinones was about six feet away from Pedersen when Pedersen's first shot was fired. *Appellant App. 1141-1142, R. Doc. 37-5, at 117-118, 123.* Regardless, it is undisputed that Quinones was rapidly approaching Pedersen and Schultz with a knife in a threatening manner. *Appellant App. 1358.*

Schultz retreated, dropped the spent Taser and pulled his firearm as Quinones did not stop moving forward with the knife. *Appellant App. 1111, R. Doc. 36-19, at 3:41-47.*

"Carroll heard the shots and saw [Quinones] continue to brandish the knife; when [Quiniones] started running in Carroll's direction, Carrol drew his firearm." *Appellant App. 687, 691, 1351-1352, R. Doc. 36-10, at 604, 608; Appellant App. 1111, R. Doc. 36-19, at 3:44.*

Wenande arrived on scene next and heard "Pedersen's shouts of 'he's got a knife!' and 'drop the knife' both on the radio traffic before arriving on scene and as he was exiting his squad car." *Appellant App. 950-951, 1352, R. Doc. 36-10, at 867-868.* "Wenande then heard the first round of gunshots, even though he could

---

[3] The average walking speed is 3 mph. *App. 1233, R. Doc. 37-6, at 30.*

not see what was happening because his view was blocked by the other squad cars." *Appellant App. 950-951, 1352, R. Doc. 36-10, at 867-868*. With his gun drawn, "Wenande ran to the scene, finding [Quinones] holding himself against a tree with 'one hand open and one hand closed.'" *Appellant App. 951, 1352, R. Doc. 36-10, at 868; Appellees App. 9, R. Doc. 36-21, at 3:43*.

Quinones's speed increased a second time as he moved toward Wenande and Carroll. *Appellant App. 1111, 1353, R. Doc. 36-19, at 3:46; Appellant App. 1126-1127, R. Doc. 37-6, at 23-23*. "Officers continued ordering [Quinones] to drop the knife, but [Quinones] – still holding the knife – instead moved toward Carrol and Wenande[4], those two officers, along with Stariha and Schultz, fired another round of shots." *Appellant App. 669, 691, 707-708, 951, 953, 956-957, 1353, R. Doc. 36-10, at 586, 608, 624-625, 868, 871, 873-874; Appellant App. 1111, R. Doc. 36-19, at 3:44-46; Appellees App. 277, R. Doc. 36-20, at 4:09*. "[Q]uinones fell to the ground and finally released the knife, and the officers handcuffed him." *Appellant App. 952, 1353, R. Doc. 36-10, at 869; Appellant App. 1111, R. Doc. 36-19, at 3:47-3:52*.

After Quinones went to the ground, Wenande re-holstered his gun and helped Pedersen handcuff Quinones. *Appellant App. 951, R. Doc. 36-10, at 868*.

---

[4] "Wenande did not see a knife in [Quinones'] clenched hand, but he inferred that [Quinones] had a knife because of what he had heard over the radio and from other officers in the moments before the shooting." *Appellant App. 1353, fnt. 5; Appellant App. 952, R. Doc. 36-10, at 869.p*

Appellate Case: 22-2818    Page: 22    Date Filed: 11/21/2022 Entry ID: 5219512

"The officers administered first aid, but [Quiniones] died from his wounds at the scene." *Appellant App. 693, 952-954, 1353, R. Doc. 36-10, at 610, 869-871.*

Ultimately, Schultz observed Quinones charge at himself and the other officers with the knife from close range. *Appellant App. 707, R. Doc. 36-10, at 624.* Further, Quinones had refused all commands and never attempted to flee or create distance. *Id.; Appellees App. 277, R. Doc. 36-20, at 4:08.* Based on these observations, Schultz believed Quinones presented a continuing deadly threat. *Appellant App. 706, R. Doc. 36-10, at 624.*

Further, when asked by investigators what his thought process for using deadly force, Wenande stated:

> …I heard that he had a knife. Um, I anticipated that since shots had already been fired that he had already tried to kill someone else or try and seriously harm someone else. Um, and then when he was looking at me. I saw his hands were closed at no time did he put his hands up or surrender to me. Um, as commands were being given so I, I believed the still had the knife and that he was going to try and stab me or my partner.

> …he looked kind of angry and when he started moving right towards us I remember thinking that he's either gonna try and stab and kill me or he's gonna try and stab and kill the Richfield officer that's right in front of me.

*Appellant App. 954, 956-957, R. Doc. 36-10, at 871, 873-874.*

Approximately 4.2 seconds elapsed between the first and last shots fired. *Appellant App. 1233, 1353, R. Doc. 37-6, at 30.* Quinones had ignored all

commands from the officers throughout the entire incident. *Appellant App. 1111,*

*R. Doc. 36-19, at 3:33-50.*

After carefully reviewing the record, including the videos capturing the

events, the district court found the following undisputed facts:

(1)     [Quinones] was behaving erratically before his death, leading
        his wife's grandfather to go looking for him because they were
        concerned about his mental state.

(2)     [Quinones] committed the felony of fleeing a police officer in a
        motor vehicle.

(3)     By leading police officers on a reckless, five-minute chase,
        [Quinones] endangered not only the lives of those officers, but
        the lives of numerous innocent motorists and pedestrians.

(4)     After abruptly braking and exiting his car, [Quinones]
        aggressively approached Pedersen, brandished a knife, ignored
        repeated commands to drop the knife, and repeatedly shouted
        "do it!" Pedersen retreated from [Quinones], trying to keep
        [Quinones] at a safe distance.

(5)     [Quinones] suddenly and quickly charged at the officers with
        the knife, causing them to respond with the first round of
        gunfire.

(6)     [Quinones] was not felled by the first round of gunfire and did
        not drop his knife.

(7)     Moments after being hit by the first round of gunfire,
        [Quinones] moved toward the officers while clutching the
        knife. The officers responded with the second round of gunfire.

*Appellant App. 1358.*

Based on the totality of the undisputed facts, the district court granted

qualified immunity to Pedersen and Wenande on Plaintiff's excessive force and failure to intervene claims under 42 U.S.C. § 1983, and also dismissed with prejudice Plaintiff's *Monell,* failure to train and failure to supervise claims against Edina. *Appellant App. p. 1365.* The district court declined to exercise supplemental jurisdiction over the Trustee's state-law claims, and therefore, dismissed those claims without prejudice. *Id.*

## SUMMARY OF ARGUMENT

The district court's decision to grant qualified immunity to Pedersen and Wenande must be affirmed because the district court applied the correct qualified immunity standard, warnings were provided before deadly force was used, the district court considered and rejected the twenty-one-foot rule, Quinones' mental status does not change the qualified immunity analysis, and alternative actions are irrelevant to the reasonableness inquiry.

## ARGUMENT

### I.  STANDARD OF REVIEW.

The Court conducts a *de novo* review of a district court's granting of summary judgment based on qualified immunity. *Lacross v. City of Duluth*, 713 F.3d 1155, 1157 (8th Cir. 2013). Qualified immunity shields public officials from civil liability as long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*

18

*v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is meant to allow a public official to perform their duties "as they think right, rather than acting out of fear for their own personal fortunes." *Greiner v. City of Champlin*, 27 F.3d 1346, 1351 (8th Cir. 1994) Qualified immunity provides "breathing room" for public officials to make reasonable mistakes of judgment and will protect "all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 5 (2013) (*quoting Ashcroft v. al-Kid*, 563 U. S. 731, 743 (2011). A police officer is entitled to qualified immunity unless: (1) the evidence establishes a violation of a constitutional right, and (2) "the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (*quoting Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012).

Further, the Court must not adopt a version of facts that is "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007); *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010).

## II. THE TRUSTEE WAIVED CLAIMS AND ISSUES.

The Trustee's failure to raise a claim or issue in her opening brief constitutes a waiver of those claims and issues. *United States v. Azure*, 539 F.3d 904, 911-912 (8th Cir. 2008) (appellant waived his right to allocution by not including it in the opening brief); *Jasperson v. Purolator Courier Corp.*, 765 F.2d 736,740-741 (8th

19

Cir. 1985) (failure to request a new trial in the opening brief was an abandonment of that issue).

In our case, the following issues and claims are not included in the Trustee's opening brief:

- The Trustee does not dispute the district court's conclusion that Pedersen and Wenande's use of deadly force was reasonable under federal law, and therefore, Quinones did not have a Fourth Amendment right against the deadly force used by Pedersen and Wenande. *Appellant's Brief.* Instead, the Trustee argues that Pedersen and Wenande's use of deadly force was unreasonable under Minnesota's new qualified immunity standard, and Quinones had a Minnesota state right against the deadly force used by Pedersen and Wenande. *Id, pp. 19-21.*

- The Trustee does not claim that Pedersen and Wenande's use of deadly force was forbidden by clearly established federal law. *Appellant's Brief.*

- The Trustee does not claim Quinones was mentally ill. *Id.*

- The Trustee does not claim the district court erred in dismissing as a matter of law her *Monell,* failure to intervene, failure to train and failure to supervise claims. *Id.*

20

- The Trustee does not claim the district erred by making the following findings of fact, among others: 1) Quinones "committed the felony of fleeing from a police officer in a motor vehicle." 2) "By leading police officers on a reckless, five-minute chase, Brian endangered not only the lives of those officers, but the lives of numerous innocent motorists and pedestrians." 3) "After abruptly braking and exiting his car, [Quinones] aggressively approached Pedersen, brandishing a knife, ignored repeated commands to drop the knife, and repeatedly shouted 'do it!' Pedersen retreated from [Quinones], trying to keep [Quinones] at a safe distance." 4) "[Quinones] suddenly and quickly charged at [Pedersen and Schultz] with the knife, causing [Pedersen and Stariha] to respond with the first round of gunfire." 5) "[Quinones] was not felled by the first round of gunfire and did not drop his knife." 6) "Moments after being hit by the first round of gunfire, [Quinones] again moved toward the officers while clutching the knife. [Wenande, Stariha, Schultz and Carroll] responded with the second round of gunfire." *Id.; see Appellant App. 1358.*

As a result, the Trustee has abandoned and waived these claims and issues. *Azure*, 539 F.3d at 911-912; *Jasperson*, 765 F.2d at 740-741.

21

Accordingly, as a matter of law, this Court must determine whether the district erred in not apply the alleged Minnesota standard for qualified immunity, along with Quinones' alleged new right under Minnesota law.

### III. THE COURT CANNOT ADOPT THE TRUSTEE'S VERSION OF FACTS THAT ARE CONTRADICTED BY VIDEO EVIDENCE.

The Trustee's "Statement of the Case" is largely a recycled version of the facts she presented to, and were rejected by, the district court. *Appellant App. 1346 - 1355; Appellant's Brief, pp. 3-16.* Instead of blindly accepting the Trustee's version of facts, the district court examined the video evidence, and rightfully refused to adopt the Trustee's version of facts because they contradict the irrefutable video evidence. *Appellant App. 1345-1354, 1357-1358; Scott,* 550 U.S. at 380-81; *Wallingford,* 592 F.3d at 892. By presenting her rejected version of facts, the Trustee is seeking another "bite at the apple" and is hoping this Court will do what the district court refused to do – ignore the video evidence and blindly accept the Trustee's version of facts. Just like the district court, this Court must review the videos and it cannot adopt a version of facts that is "blatantly contradicted" by the indisputable video evidence. *Scott,* 550 U.S. at 380-81; *Wallingford,* 592 F.3d at 892.

### IV. THE DISTRICT COURT APPLIED THE CORRECT QUALIFIED IMMUNITY STANDARD WHEN GRANTING QUALIFIED IMMUNITY TO OFFICERS PEDERSEN AND WENANDE.

22

The Trustee claims the district court erred by not applying Minnesota's alleged new standard for qualified immunity, along with an alleged new state right, that were allegedly established in the Minnesota criminal case of *Minnesota v. Noor*, Dist. Ct. File No. 27-CV-18-6859. *Appellant's Brief, pp. 19-24.* Further, the Trustee claims this alleged new standard and right were codified in Minnesota Statute Sections 609.066, subd. 1a and 626.8434. This argument lacks merit and it must be dismissed.

### A. Qualified Immunity Cannot be Defeated by a State Right.

The Trustee argues that the district court erred by not applying a new higher Minnesota state right that was allegedly established in the *Noor* state court decision.[5] This argument is terminally flawed.

The purpose of a Section 1983 claim is to provide plaintiffs with a vehicle to seek damages for injuries caused by the deprivation of federal rights. *Carey v. Piphus*, 435 U.S. 247, 254 (1978). "A public official does not lose his qualified immunity merely because his conduct violates some statutory or administrative provision." *Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir. 1988) (*citing Davis v. Scherer*, 468 U.S. 183, 194 (1984)). For the Trustee to overcome qualified immunity, she must allege a violation of a clearly established <u>federal</u> right and not

---

[5] The Trustee cites 25 U.S.C. § 1921 as an example where courts should apply the higher of two standards. However, this federal statute has nothing to do with qualified immunity or constitutional rights as it specifically applies to standards "applicable to protect the rights of parent or Indian custodian of Indian child." *Id.*

Appellate Case: 22-2818     Page: 30     Date Filed: 11/21/2022 Entry ID: 5219512

a <u>state</u> right which could form the basis of a federal constitutional right. *Davis,* 468 U.S. at 197. In *Elder v. Holloway*, 510 U.S. 510 (1994), the Supreme Court clarified the *Davis* holding:

> Is qualified immunity defeated where a defendant violates *any* clearly established duty, including one under state law, or must the clearly established right be the federal right on which the claim for relief is based? The Court held the latter.

*Id.* at 515.

Therefore, the Trustee's argument fails immediately because, even if a new state right was established from the *Noor* decision, it would not defeat qualified immunity because it would not be a clearly established federal right. *Edwards,* 863 F.2d at 608; *Davis,* 468 U.S. at 194; *Elder*, 510 U.S. at 515.

Furthermore, the *Noor* state criminal case did not establish a new state right nor a higher qualified immunity standard.

**B.      The *Noor* State Criminal Case Could Not, and Did Not, Establish a New Standard for Qualified Immunity, and even if it did, that standard was not Clearly Established.**

The Trustee argues that because qualified immunity did not protect Officer Noor during his criminal case, it should not protect Pedersen and Wenande in this civil case. The fatal flaw in this argument is that qualified immunity only applies to federal <u>civil</u> lawsuits – not state criminal cases. *Ransom v. Grisafe*, 790 F.3d 804, 810 (8th Cir. 2015) (qualified immunity protects government officials from personal liability and civil damages); *Pearson v. Callahan*, 555 U.S. 223, 231

24

(2009) (same); *United States v. Chiquito*, 175 Fed. Appx. 215 at *8 (10th Cir. 2006) (qualified immunity is not applicable to a criminal case). Therefore, Officer Noor could not request, nor could the state district court grant, qualified immunity in his state criminal case. *Id.* And the county attorney in *Noor* agreed.

Specifically, the county attorney in *Noor* recognized that qualified immunity only applies to federal Section 1983 civil claims and "is a completely separate concept from what defenses are available for criminal liability and which instructions should be given to a jury in a very different kind of case." *App. 17.*

When faced with this same argument, the district court in our case came to the same conclusion:

> Moreover, whether an officer is subject to *criminal* liability under *state* law has little bearing on whether on officer is subject to *civil* liability under *federal* law. The legal standards differ significantly.

*Appellant App. 1363, fnt. 8.*

Accordingly, the *Noor* state criminal case could not, and did not, create a new qualified immunity standard.

The Trustee maintains that, "If the acts of the police officers satisfied the criminal burden, then it must have satisfied the civil burden." *Appellant's Brief, p. 19.* However, it is undisputed that the same county attorney who prosecuted Officer Noor declined to charge Pedersen and Wenande. *Appellant App. 1363, fnt. 8.* Therefore, based on the Trustee's own argument, the lack of criminal

25

charges against Pedersen and Wenande, is undisputed proof that Pedersen and Wenande's acts did not satisfy the criminal burden, and accordingly, they did not violate the alleged new state right and new state qualified immunity standard in Minnesota.

Even if the *Noor* state criminal case created a new qualified immunity standard, nowhere in the Trustee's brief does she identify the alleged new standard. *See Appellant's Brief.* A court cannot consider a new standard, nor can police officers be put on notice that they allegedly violated a new standard, unless the alleged new standard is identified. *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (the purpose of qualified immunity is to put officers on notice that their conduct is unlawful); *Hanson v. Best*, 915 F.3d 543, 548 (8th Cir. 2019) ("To be clearly established, a legal principle . . . must be 'settled law' . . . [that is] clear enough that every reasonable officer would interpret the particular rule the plaintiff seeks to apply." (quotation omitted).

Further, the Trustee has the burden of establishing that the alleged new constitutional standard that was violated was clearly established at the time of the incident. *Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014) (*citing Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007)). "The state of the law should not be examined at a high level of generality." *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019). "The dispositive question is whether the violative nature of

26

*particular* conduct is clearly established." *Mullenix v. Luna,* 136 S.Ct. 305, 308 (2015) (per curiam) (internal quotation marks omitted). "Such specificity is especially important in the Fourth Amendment context, where … it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id.* (internal quotation marks omitted). "Use of excessive force is an area of law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 138 S.Ct. at 1153.

Here, even if the *Noor* state criminal case created a new qualified immunity standard, and the Trustee could identify it, this new standard would not be considered clearly established law because the facts of our case are drastically different from the facts in *Noor*. As the district court correctly pointed out:

> …the *Noor* case and this case have dramatically different facts. Most significantly, Noor's victim, unlike [Quinones] did not commit a felony, did not defy numerous police commands, and did not charge at Noor or anyone else while brandishing a knife.

*Appellant App. 1363, p. 19 fnt. 8.*

Thus, this alleged new qualified immunity standard would not have put Pedersen and Wenande on notice that the use of deadly force was prohibited under the specific factual circumstances they faced with Quinones. *Kisela*, 138 S.Ct. at 1153; *Mullenix*, 136 S.Ct. at 308.

27

Additionally, the *Noor* case was not fully adjudicated until the Minnesota Supreme Court issued its decision on September 21, 2021. *State v. Noor*, 964 N.W.2d 424 (Minn. 2021). Since the incident with Quinones happened on September 7, 2019, it was impossible for the *Noor* decision to provide Pedersen and Wenande with fair notice that they had allegedly violated this alleged new standard. *Smith,* 754 F.3d at 546; *see also Turpin v. Cty. of Rock,* 262 F.3d 779, 783 (8th Cir. 2001) (the right the government official allegedly violated must be clearly established at the time of the event in question); *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) (whether a government officials actions are objectively reasonable is evaluated "in light of the clearly established law at the time of the events in question."); *Chambers v. Pennycook*, 641 F.3d 898, 908 (8th Cir. 2011) (police officers must be given fair warning that their conduct was unconstitutional).

As a result, even if the *Noor* case created a new qualified immunity standard, Pedersen and Wenande would be entitled to qualified immunity because that new standard was not clearly established at the time of the incident in question. *Pearson*, 555 U.S. at 244; *Hanson*, 915 F.3d at 548; *Mullenix*, 136 S.Ct. at 308; *Kisela*, 138 S.Ct. at 1153.

Simply put, the *Noor* state criminal case could not, and did not, create a new qualified immunity standard, and even if a new standard was created, Pedersen and

28

Wenande would be entitled to qualified immunity because the new standard was not clearly established on September 7, 2019.

### C. There is No New Qualified Immunity Standard in Minnesota.

The Trustee maintains that the alleged new qualified immunity standard is contained in Minnesota Statute § 626.8434. *Appellant's Brief, pp. 23-24 ftn. 132-135.* This statute has nothing to do with qualified immunity.

Specifically, Minnesota Statute § 626.8434 states in its entirety:

WARRIOR-STYLE TRAINING PROHIBITED

**Subdivision 1.** *Definition.* — For purposes of this section, "warrior-style training" means training for peace officers that dehumanizes people or encourages aggressive conduct by peace officers during encounters with others in a manner that deemphasizes the value of human life or constitutional rights, the result of which increases a peace officer's likelihood or willingness to use deadly force.

**Subd. 2.** *No continuing education credits or tuition reimbursement.* **(a)** The board may not certify a continuing education course that includes warrior-style training. **(b)** The board may not grant continuing education credit to a peace officer for a course that includes warrior-style training. **(c)** The board may not reimburse a law enforcement agency or a peace officer for a course that includes warrior-style training.

**Subd. 3.** *Training prohibited.* — A law enforcement agency may not provide warrior-style training, directly or through a third party, to a peace officer.

*Add., p. 22; Minn. Stat. § 626.8434.*

29

Accurately titled, the above statute simply prohibits "warrior-style training" for peace officers in Minnesota. *Id.* There is no mention of qualified immunity, rights, federal statutes, reasonableness of force or clearly established law. *Id.*

In short, Minnesota Statute § 626.8434 has nothing to do with qualified immunity, and any argument that it contains a new qualified immunity standard, is pure fiction.

### D. A New Right was Not Codified into Minnesota Statute Section 609.066.

The Trustee maintains that a new state right was allegedly established in the *Noor* case, which was then codified in Minnesota's Authorized Use of Deadly Force by Peace Officers Statute § 609.066, subdivision 1a. *Appellant's Brief, p. 23 fnt. 130.* This is simply untrue. Even if a new state right was contained in Minnesota Statute § 609.066, it could not defeat qualified immunity and it is not considered clearly established law.

Minnesota Statute § 609.066, subdivision 1a states in totality the following:

Subd. 1a. *Legislative intent.* — The legislature hereby finds and declares the following:

(1) that the authority to use deadly force, conferred on peace officers by this section, is a critical responsibility that shall be exercised judiciously and with respect for human rights and dignity and for the sanctity of every human life. The legislature further finds and declares that every person has a right to be free from excessive use of force by officers acting under color of law;

30

**(2)** as set forth below, it is the intent of the legislature that peace officers use deadly force only when necessary in defense of human life or to prevent great bodily harm. In determining whether deadly force is necessary, officers shall evaluate each situation in light of the particular circumstances of each case;

**(3)** that the decision by a peace officer to use deadly force shall be evaluated from the perspective of a reasonable officer in the same situation, based on the totality of the circumstances known to or perceived by the officer at the time, rather than with the benefit of hindsight, and that the totality of the circumstances shall account for occasions when officers may be forced to make quick judgments about using deadly force; and

**(4)** that peace officers should exercise special care when interacting with individuals with known physical, mental health, developmental, or intellectual disabilities as an individual's disability may affect the individual's ability to understand or comply with commands from peace officers.

*Add., pp. 23-24; Minn. Stat. § 609.066, subd. 1.*

Clearly, based on the plain language of the statute, the Minnesota legislature did not codify any new state right. *Id.* It simply adopted and codified the holdings in *Graham v. Connor*, 490 U.S. 386 (1989) and *Tennessee v. Garner*, 471 U.S. 1 (1985), which the Trustee is not claiming either Pedersen and Wenande violated. *Id.; Appellant's Brief.*

Further, even if a new state right was codified by the Minnesota State Legislature, this new right would not defeat qualified immunity. *See Prior Section; see also Edwards*, 863 F.2d at 608; *Davis,* 468 U.S. at 194; *Elder*, 510 U.S. at 515.

31

Additionally, even if the codification of *Graham* and *Garner* was considered a new state right, Pedersen and Wenande would be entitled to qualified immunity because the Trustee is not arguing that Pedersen and Wenande violated either *Graham* or *Garner* and the "general rules set forth in *Garner* and *Graham* do not by themselves create clearly established law outside an 'obvious case.'" *Kisela*, 138 S.Ct. at 1153 (*quoting White v. Pauly*, 137 S.Ct. 548, 552 (2017)). As stated previously, this is not an "obvious case" because the facts in our case are drastically different from *Graham* and *Garner* and the Trustee has failed to cite any legal precedent that would have put Pedersen and Wenande on notice that they were forbidden from using deadly force under the specific circumstances they faced on September 7, 2019. *See Prior Section.* In fact, legal precedent authorized the use of deadly force under these circumstances. *See Hassan v. City of Minneapolis*, 489 F.3d 914, 919 (8th Cir. 2007) (deadly force was reasonable when a person brandishing a machete and tire iron approached officers in a threatening manner, did not slow down and did not respond to officers' orders to drop his weapons); *Hayek v. City of St. Paul*, 488 F.3d 1049, 1054-1055 (8th Cir. 2007) (both rounds of gunfire were reasonable when person stabbed an officer, and after the first use of deadly force, the person still pursued the officer with a deadly weapon); *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 605 (2015) (person came at officers with a knife, did not go down after first round of gunfire,

but went down after second round of gunfire.); *Fredrick v. Motsinger*, 873 F.3d 641, 645-646 (8th Cir. 2017) (this Court agreed with the district court that the use of deadly force was objectively reasonable when a person, despite being previously tased, ran toward an officer with a knife).

Accordingly, the Trustee's argument fails because no new right was codified in Minnesota Statute Section 609.066, and even if a new right was codified, it could not defeat qualified immunity and the new right is not considered clearly established law.

## V. WARNINGS WERE PROVIDED BEFORE DEADLY FORCE WAS USED.

Relying on *Ludwig v. Anderson*, 54 F.3d 465 (8th Cir. 1995), the Trustee argues that the alleged lack of warnings before the use deadly force, did not automatically make Pedersen and Wenande's use of force unreasonable, but allegedly exacerbated the circumstances of the incident in question. *Appellant's Brief, pp. 25-26.* This argument fails because officers provided multiple warnings to Quinones and *Ludwig* is inapplicable.

"[W]here it is feasible, a police officer should give a warning that deadly force is going to be used." *Estate of Morgan v. Cook*, 686 F.3d 494, 497 (8th Cir. 2012) (*citing Garner*, 471 U.S. 1, 11-12.). In the *Cook* case, this Court held that pointing a gun and ordering a person to drop their weapon provides the requisite notice that deadly force will be used. *Cook,* 686 F.3d at 498.

33

Here, it is undisputed that all Defendant Officers, including Pedersen and Wenande, pointed their guns at Quinones and repeatedly ordered him to drop his knife before deadly force was used. *Appellant App. 1350-1353; R. Doc. 36, Exs. 8, 19 (3:44-46), 21 (3:31-39), 22 (6:40).*

Also, *Ludwig* is inapplicable because, unlike Quinones, Ludwig ran and moved away from officers and bystanders while brandishing a knife. *Ludwig,* 54 F.3d at 468-469; *see also Kong v. Burnsville,* 960 F.3d 985, 993 (8th Cir. 2020); *Brown v. Bloomington,* 280 F.Supp.2d 889, 893 (D. Minn. 2003); *Lewis v. Burnsville,* 573 F.Supp.3d 1334, 1345 (D. Minn. 2021); *Powell v. Shelton,* 2020 WL 6130741 at **4 -*5.

Further, unlike *Ludwig,* it is undisputed that Quinones: a) committed a felony of fleeing from the police in a motor vehicle; b) endangered the lives of officers, motorists and pedestrians; c) aggressively approached Pedersen with a knife above his right shoulder; d) ignored repeated commands to drop the knife; e) shouted "Do it!" to Pederson; f) quickly charged at officers with the knife, which caused the first round of gun fire; g) did not go down or drop the knife; and h) moved again toward officers with the knife, which resulted in the last round of gunfire. *Appellant App. 1358.*

Accordingly, the Trustee's argument fails because Pedersen and Wenande did provide warnings to Quinones before deadly force was used and *Ludwig* is

34

inapplicable to the present case. *Cook*, 686 F.3d at 498; *Ludwig,* 54 F.3d at 468-469; *Kong*, 960 F.3d at 993; *Brown*, 280 F.Supp.2d at 893; *Lewis*, 573 F.Supp.3d at 1345; *Powell*, 2020 WL 6130741 at *4 -*5.

## VI. THE DISTRICT COURT DID CONSIDER THE TRUSTEE'S TWENTY-ONE-FOOT RULE ARGUMENT IN ITS QUALIFIED IMMUNITY ANALYSIS AND REJECTED IT.

The Trustee maintains that the district court erred by not considering her argument that Pedersen and Wenande violated the twenty-one-foot rule when conducting its qualified immunity analysis. *Appellant's Brief, p. 25.* Specifically, the Trustee quotes the *Ludwig* decision and states, "'[a]lthough these 'police department guidelines do not create a constitutional right,' . . . they are relevant to the analysis of constitutionally excessive force.'" *Id.* (*quoting Ludwig*, 54 F.3d at 472). This argument falls apart right out of the gate.

First, the district court did consider the Trustee's argument that the Officers violated the twenty-one-foot rule. *Id.* at 18 fnt. 7. The district court stated, "[Trustee] points to a 'twenty-one-foot rule' that she says the officers violated. (citations omitted). Whatever merit that rule may have as a matter of policy, no case holds that it is compelled by the United States Constitution." *Id.* Thus, the district court did consider the Trustee's twenty-one-foot rule argument and rejected it.

Second, there is no evidence that the "twenty-one-foot rule" is an Edina

35

Police Department rule or guideline – because it is not. Further, the "twenty-one-foot rule" is:

> …in essence a formula for calculating how long it would take for a person carrying an edged weapon to inflict lethal harm to a nearby person. According to the formula, a person with an edged weapon standing within 21 feet of another can inflict lethal harm within approximately 2 seconds. The 21-foot rule is not a policy that directed or compelled [an officer's behavior]. It is, instead a formula used to aid an officer's assessment of risk.

*Estate of Larsen v. Murr,* 2006 WL 322602 *16 (D. Colo. Feb. 10, 2006) (brackets added).

Accordingly, even if the district court did not consider the Trustee's argument, the district court was not required to consider the twenty-one-foot rule because it was not a rule or guideline compelling Pedersen and Wenande's behavior. *Id.*

Third, even if the twenty-one-foot rule was considered an Edina Police Department policy, and Pedersen and Wenande allegedly violated that rule, it does not create a legal right that can be the subject of a Section 1983 action. *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993). This issue was recently addressed by this Court in *Christiansen v. Eral*, 52 F.4th 377 (8th Cir. 2022).

In *Christiansen,* Christiansen lead police officers on a high-speed chase in which officers deployed stop sticks and ultimately a PIT maneuver by Officer Eral to stop Christiansen. Christiansen brought excessive force and substantive due

36

process claims against Officer Eral, which were dismissed by the district court. On appeal, Christiansen argued that his claims against Officer Eral should not have been dismissed because "Eral knew that his pursuit of Christiansen and his use of force violated police department policy." *Id.* at *4. This Court rejected this argument by holding the following:

> Federal law subjects to suit persons who, under color of state law, deprive a person "of any rights, privileges, or immunities secured by the Constitution and laws." *See* 42 U.S.C. § 1983. We've repeatedly explained that police department guidelines and policies do not create rights that give rise to a § 1983 action. *See Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993). Christiansen recognizes our view but tries to circumvent it: He says that, though "a policy violation does not equate to a constitutional violation, [Eral's] knowledge of the policy shows his use of force in these circumstances was objectively unreasonable and an intent to harm" Christiansen.
>
> Not so. Even if we accept Christiansen's conclusory allegation that Eral knew the relevant policies, *see Iqbal*, 556 U.S. at 680-81, his knowing violation of department policy doesn't transform his actions into unconstitutional behavior. Eral may be subject to internal discipline from the department, but the constitution doesn't rise and fall with the whims of each police department's policies, which are free to go above and beyond what the constitution or federal law requires. *See Cole*, 993 F.2d at 1334. Eral's actions may show nothing more than mere disagreement with department policies or, relatedly, that he thought reason required him to act as he did rather than follow department directives. Just because Eral chose to violate department policy doesn't mean that he acted unreasonably from a constitutional perspective or with malicious intent to harm Christiansen. To hold otherwise would open a backdoor permitting Christiansen to escape the well-established and commonsense notion that only the constitution and laws can create constitutional and legal rights. *See id.*

*Id.* at *4-6.

Like *Christiansen,* even if the twenty-one-foot rule was considered an Edina Police Department Policy, it does not create a constitutional right for Quinones. *Id.*; *see also Cole*, 993 F.2d at 1334.

Like *Christiansen,* even if the twenty-one-foot rule was considered an Edina Police Department Policy, and Pedersen and Wenande violated that policy, it does not transform Pedersen and Wenande's actions into unconstitutional behavior. *Christiansen v. Eral*, 52 F.4th 377 at *4-6.

And like *Christiansen*, the Trustee's argument must be dismissed, because "[t]o hold otherwise would open a backdoor permitting [the Trustee] to escape the well-established and commonsense notion that only the constitution and laws can create constitutional and legal rights." *Id.* (brackets added).

Therefore, the Trustee's twenty-one-foot rule argument must be rejected, because: 1) The district court did consider this argument and rejected it; 2) The twenty-one-foot rule is not an Edina Police Department policy; and 3) Even if the twenty-one-foot rule was an Edina Police Department policy, and Pedersen and Wenande violated that policy, it does not create a right for Quinones nor does it convert Pedersen and Wenande's acts into unconstitutional conduct.

## VII. QUINONES' EMOTIONAL OR MENTAL STATUS WOULD NOT CHANGE THE QUALIFIED IMMUNITY ANALYSIS.

Appellant claims that, because the district court allegedly made a factual determination that Quinones "committed suicide by cop," it allegedly creates a fact

38

issue. *Appellant's Brief, p. 28.* Specifically, the Trustee argues that Quinones' alleged status as an emotionally or mentally disturbed person allegedly creates a question of fact as to whether Quinones posed a deadly threat to Pedersen and Wenande. *Appellant's Brief, pp. 27-28.* However, in the middle of her argument, the Trustee cites *Ludwig* for the following:

> As applied to this case, **this does not mean that Decedent's "status as an emotionally disturbed person entitles him to any additional, clearly established constitutional rights which would be relevant to the qualified immunity analysis**…"

*Appellant's Brief, p. 27 (citing Ludwig*, 54 F.3d at 472) (Emphasis Added).

We agree and this legal citation completely defeats the Trustee's argument.

To begin with, the district court did not state or conclude that Quinones "committed suicide by cop" was an undisputed fact. *Add., p. 1.* Instead, it was an opinion made by the district court that was not required, nor was it a part of, the district court's legal reasoning for granting qualified immunity for Pedersen and Wenande. *Appellant App. 1345-1365.* In other words, it was dictum and not a finding of fact.

Next, whether or not Quinones was mentally or emotionally disturbed[6] "does not change the fact that [Quinones] posed a deadly threat to the officers…" *Hassan v. Minneapolis*, 489 F.3d 914, 919 (8th Cir. 2007) ("Quinones" added). It is well-

---

[6] Again, the Trustee does not claim Quinones was mentally or emotionally disturbed. *See Trustee's Brief.* Further, none of the Defendants argued that Quinones was mentally or emotionally disturbed. *R. Docs. 29, 35, 43, 44.*

Appellate Case: 22-2818    Page: 46    Date Filed: 11/21/2022 Entry ID: 5219512

established that "[k]nowledge of a person's disability simply cannot foreclose officers from protecting themselves, the disabled person, and the general public when faced with threatening conduct by the disabled individual." *Id.* (*citing Sanders v. Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007); *see also Hayek v. St. Paul*, 488 F.3d 1049, 1055 (8th Cir. 2007) ("Even if [decedent] were mentally ill, and the officers knew it, [decedent's] mental state does not change the fact he posed a deadly threat to the officers."). As the Trustee correctly highlighted in her brief, Quinones' alleged mental status does not entitled Quinones to "any additional, clearly established constitutional rights, which would be relevant to the qualified immunity analysis." *Appellant's Brief, p. 27 (citing Ludwig*, 54 F.3d at 472).

Accordingly, even though the district court opined that Quinones committed suicide by cop, Quinones' alleged mental or emotional status does not, and did not, change the qualified immunity analysis. *Hassan*, 489 F.3d at 919; *Hayek*, 488 F.3d at 1055; *Ludwig*, 54 F.3d at 472; *Appellant App. 1356-1363*.

Moreover, qualified immunity and reasonableness of force, which includes whether Quinones posed a deadly threat to officers, are questions of law for a court and not predicate facts to be determined by a jury. *McKenney v. Harrison*, 635 F.3d 354, 359 (8th Cir. 2011); *Pace v. Des Moines*, 201 F.3d 1050, 1056 (8th Cir.

Appellate Case: 22-2818     Page: 47     Date Filed: 11/21/2022 Entry ID: 5219512

2000); *Kelsay v. Ernst*, 933 F.3d 975, 981 (8th Cir. 2019); *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).

Therefore, when determining qualified immunity and reasonableness of force, the district court correctly concluded that Quinones was a deadly threat to Pedersen and Wenande as a matter of law. *Id.; Add., pp. 14-15.* Despite opining that Quinones committed suicide by cop, the district court correctly focused on whether, based on the undisputed facts, a reasonable officer in Pedersen and Wenande's position could believe that Quinones was a deadly threat as a matter of law. *Appellant App. 11356-1363.*

Additionally, the Trustee's reliance on *Ludwig* is misplaced again. In *Ludwig*, qualified immunity was denied, not because Ludwig may have been emotionally disturbed, but because there were inconsistencies in officers' testimony that created material issues of predicate fact[7] as to: 1) distances to bystanders; 2) whether Ludwig moved toward officers or bystanders; and 3) number and location of bystanders. *Ludwig*, 54 F.3d at 473.[8]

Unlike *Ludwig*, there are no material issues of predicate fact because the predicate facts were captured by squad videos. *Scott,* 550 U.S. at 380-81; *Wallingford*, 592 F.3d at 892.

---

[7] Predicate facts are "only the relevant circumstances and acts of the parties themselves…" *Pace*, 201 F.3d at 1056.
[8] Unlike the present case, in *Ludwig* there were no videos capturing the events. *Ludwig*, 54 F.3d at 467-469.

Appellate Case: 22-2818    Page: 48    Date Filed: 11/21/2022 Entry ID: 5219512

Further, despite the Trustee's arguments to the contrary, the *Ludwig* Court did not hold that Ludwig's status as an emotionally disturbed person was relevant to the qualified immunity analysis. *Ludwig*, 54 F.3d at 472. This Court held that Ludwig's emotional status was not relevant to the qualified immunity analysis, but may be relevant to the merits at trial:

> This disparity in relevance stems from the difference between qualified immunity and the merits. *See Gainor v. Rogers*, 973 F.2d 1379, 1383 (8th Cir. 1992). "The issue on the merits is whether the officer *violated the law* when the arrest was made, whereas the immunity question is whether the officer *violated clearly established law* when the arrest was made." *Id.* (citation omitted).

*Id.*

Accordingly, Quinones' alleged emotional or mental status is irrelevant to the qualified immunity analysis, and the district court correctly determined as a matter of law that Pedersen and Wenande's use of deadly force was reasonable under the circumstances.

## VIII. ALTERNATIVE ACTIONS ARE IRRELEVANT TO THE REASONABLENESS INQUIRY.

The Trustee alleges that the district court erred by not allowing a jury to consider whether Pedersen and Wenande should have used alternative actions before using deadly force. This same argument was rejected by this Court in *Schultz v. Long*, 44 F.3d 643 (8th Cir. 1995).

42

In *Schultz*, the appellant argued that the district court "erred in excluding evidence that the officers should have responded in a different manner, or that the officers should have used a lesser degree of force." *Id.* at 649. Relying on *Cole v. Bone*, 993 F.3d 1328 (8th Cir. 1993), this Court stated, "the Fourth Amendment does not allow this type of 'Monday morning quarterback' approach because it only requires that the seizure fall within a range of objective reasonableness." *Id.* (*citing Cole,* 993 F.2d at 1334). This Court went on to explain:

> The Fourth Amendment inquiry focuses not on what the most prudent course of action may have been or whether there were other alternatives available, but instead whether the seizure actually effectuated falls within a range of conduct which is objectively "reasonable" under the Fourth Amendment. Alternative measures which 20/20 hindsight reveal to be less intrusive (or more prudent) . . . are simply not relevant to the reasonableness inquiry. For clarity, the reasonableness inquiry in cases such as this where deadly force is used is simply whether "the officer [using the force] has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3, 85 L. Ed. 2d 1, 105 S. Ct. 1694 (1985). The district court committed no clear abuse of discretion in excluding this evidence because it focused on what could have been done rather than whether Officer Long had probable cause to believe Appellant posed a significant threat of harm to Officer Vanalmsick.

*Schultz*, 44 F.3d at 649.

Just like *Schultz*, the district court did not err by not considering, or allowing a jury to consider, alternative actions Pedersen and Wenande could have used because it allows a "Monday morning quarterback" approach and it is irrelevant to

43

whether their use of deadly force was objectively reasonable under the circumstances as a matter of law. *Id.*

Finally, qualified immunity and reasonableness of force are questions of law for a court and are not predicate facts to be determined by a jury. *McKenney*, 635 F.3d at 359; *Pace*, 201 F.3d at 1056; *Kelsay*, 933 F.3d at 981; *Mann*, 497 F.3d at 825. Thus, the district court did not err by not allowing a jury to consider the issues of qualified immunity and reasonableness of force. *Id.*

## CONCLUSION

For these reasons, we respectfully request that this Court affirm the district court's decision granting qualified immunity for Pedersen and Wenande.

**JARDINE, LOGAN & O'BRIEN, P.L.L.P.**

Dated: November 18, 2022

By: s/ Patrick S. Collins
    Joseph E. Flynn, #0165712
    Patrick S. Collins, #0302557
8519 Eagle Point Boulevard, Suite 100
Lake Elmo, MN 55042-8624
Telephone: (651) 290-6500
Facsimile: (651) 223-5070
jflynn@jlolaw.com
pcollins@jlolaw.com

*Attorneys for Defendants – Appelleees*
*City of Edina, Nicholas Pedersen and*
*Benjamin Wenande*

44

45

## Certificate of Compliance with FRAP 32(a)(7)(C)
## and Eighth Cir. R. 28A(h)

Patrick S. Collins, attorney for Appellees, City of Edina, Nicholas Pedersen and Benjamin Wenande, hereby certifies that this brief complies with the requirements of Federal Rule of Civil Appellate Procedure 32(a)(7)(C) and Eighth Circuit Rules and Procedures 28A(h) as follows: (1) The brief was prepared using Microsoft Word 2010, Times New Roman font size 14, and contains 9,651 words, according to the word processing program used to prepare this brief, (2) The brief has been scanned for viruses and is virus-free, and (3) The electronic version of the brief was generated by printing to PDF from the original word processing file and is searchable and subject to copying.

**JARDINE, LOGAN & O'BRIEN, P.L.L.P.**

Dated: November 18, 2022

By: s/ Patrick S. Collins
   Joseph E. Flynn, #0165712
   Patrick S. Collins, #0302557
8519 Eagle Point Boulevard, Suite 100
Lake Elmo, MN 55042-8624
Telephone: (651) 290-6500
Facsimile: (651) 223-5070
jflynn@jlolaw.com
pcollins@jlolaw.com

*Attorneys for Defendants – Appelleees*
*City of Edina, Nicholas Pedersen and*
*Benjamin Wenande*

## Certificate of Service

I hereby certify that on November 18, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. Upon court approval of the Brief, I will mail the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within three (3) calendar days, to the following non-CM/ECF participants:

**JARDINE, LOGAN & O'BRIEN, P.L.L.P.**

Dated: November 18, 2022

By: s/ Patrick S. Collins
    Joseph E. Flynn, #0165712
    Patrick S. Collins, #0302557
8519 Eagle Point Boulevard, Suite 100
Lake Elmo, MN 55042-8624
Telephone: (651) 290-6500
Facsimile: (651) 223-5070
jflynn@jlolaw.com
pcollins@jlolaw.com

*Attorneys for Defendants – Appelleees*
*City of Edina, Nicholas Pedersen and*
*Benjamin Wenande*

47