# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT
### 22-2818

---

Ashley Quinones, as Trustee for Brian Jesus Quinones-Rosario,

Plaintiff - Appellant,

v.

City of Edina, Minnesota; City of Richfield, Minnesota; Nicholas Pedersen; Benjamin Wenande; Joseph Carroll; Macabe Stariha; and Dylan Schultz, all individuals being sued in their individual and official capacities,

Defendants - Appellees.

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA
### Case No. 20-CV-01329 (PJS/BRT)

---

## BRIEF OF RICHFIELD APPELLEES

---

Jason M. Hiveley, #311546
Stephanie A. Angolkar, #388336
Julia C. Kelly, #392424
IVERSON REUVERS
9321 Ensign Avenue South
Bloomington, MN 55438
(952) 548-7200
jasonh@iversonlaw.com
stephanie@iversonlaw.com
julia@iversonlaw.com
*Attorneys for Appellees City of Richfield, Joseph Carroll, Macabe Stariha, and Dylan Schultz*

Brian K. Lewis, #398886
Francis H. White III, #396779
FRANCIS WHITE LAW, PLLC
8362 Tamarack Village
Suite 119-220
Woodbury, MN 55125
(651) 829-1503
brian.lewis@franciswhitelaw.com
francis.white@franciswhitelaw.com
*Attorneys for Appellant*

Joseph E. Flynn, #0165712
Patrick S. Collins, #0302557
JARDINE, LOGAN & O'BRIEN, PLLP
8519 Eagle Point Boulevard, Suite 100
Lake Elmo, MN 55042-8624
(651) 290-6500
jflynn@jlolaw.com
pcollins@jlolaw.com
*Attorneys for Appellees City of Edina,
Nicholas Pederson, and Benjamin
Wenande*

## <u>SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT</u>

On September 7, 2019, Brian Jesus Quinones-Rosario led Edina Officer Nicholas Pedersen on a dangerous vehicle pursuit. After driving through a red light and nearly colliding with another vehicle, Quinones unexpectedly slammed on his brakes, jumped out of his vehicle, and attacked Pedersen with a large kitchen knife. Pedersen drew his firearm, immediately backpedaled across the median and repeatedly yelled "DROP THE KNIFE!" Quinones ignored Pedersen's commands and taunted Pedersen to, "Do it. Do it." By then Richfield Officers Dylan Schultz, Joseph Carroll, and Macabe Stariha, and Edina Officer Benjamin Wenande arrived at the scene. Quinones refused the additional officers' orders to drop the knife, but instead, suddenly charged at them. In defense, officers fired at Quinones until he fell. Afterward, the investigation revealed Quinones had intended to commit suicide by cop. Appellant, Quinones's widow, brought this action against the five officers involved, and against the Cities of Richfield and Edina, for claimed violations of federal and state law. The district court dismissed Appellant's claims, finding no constitutional violation occurred because the use of deadly force was objectively reasonable. Appellant now appeals. Fifteen minutes of oral argument is requested.

i

# TABLE OF CONTENTS

Page

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT …..i

TABLE OF CONTENTS ……………………………………………………ii

TABLE OF AUTHORITIES …………………………………………………iii

STATEMENT OF THE ISSUES ……………………………………………1

STATEMENT OF THE CASE ……………………………………………...2

SUMMARY OF ARGUMENT …………………………………………14

STANDARD OF REVIEW ……………………………………………...15

ARGUMENT …………………………………………………………16

    I.    THE DISTRICT COURT PROPERLY HELD THE OFFICERS
        WERE ENTITLED TO QUALIFIED IMMUNITY …………………16

    II.    QUINONES'S MENTAL HEALTH DOES NOT AFFECT THE
        ANALYSIS OF WHETHER THE USE OF DEADLY FORCE
        WAS JUSTIFIED …………………………………………………...27

CONCLUSION …………………………………………………………31

CERTIFICATE OF COMPLIANCE …………………………………………...33

Appellate Case: 22-2818    Page: 4    Date Filed: 11/21/2022 Entry ID: 5219926

# TABLE OF AUTHORITIES

Page

42 U.S.C. § 1983 ……………………………………………………………..13, 18

Fed. R. Civ. P. 56(a) ………………………………………………………..15

Minn. Stat. § 609.066, subd. 1a(4)(2020) …………………………………..27, 28

Minn. Stat. § 626.8434 (2020) ……………………………………………..23

*Birkeland as Trustee for Birkeland v. Jorgenson*, 971 F.3d 787 (2020) ………….24

*Carpenter v. Wabash Railroad Company*, 309 U.S. 23, 60 S.Ct. 416,
 84 L.Ed. 558 (1940) ………………………………………………….19

*Celotex v. Catrett*, 477 U.S. 317 (1986) ……………………………………15

*City & Cty. of San Francisco v. Sheehan*, 137 S.Ct. 1765 (2015) ……………1, 29

*Cole v. Bone*, 993 F.2d 1328 (8th Cir. 1993) ………………………………..25

*Davis v. Buchanan Cnty., Mo.*, 11 F.4th 604 (8th Cir. 2021) …………………..25

*Davis v. Hall*, 375 F.3d 703 (8th Cir. 2004) ………………………………...15, 19

*De La Rosa v. White*, 852 F.3d 740 (8th Cir. 2017) …………………………..20

*Ebmeier v. Stump*, 70 F.3d 1012 (8th Cir. 1995)……………………………...25

*Edwards v. Baer*, 863 F.2d 606 (8th Cir. 1988) ……………………………..25

*Estate of Morgan v. Cook*, 686 F.3d 494 (8th Cir. 2012) …………………..*passim*

iii

Appellate Case: 22-2818     Page: 5     Date Filed: 11/21/2022 Entry ID: 5219926

*Graham v. Connor*, 490 U.S. 386 (1980) ……………………………………1, 18, 23

*Graham v. Barnette*, 5 F.4th 872 (8th Cir. 2021) ………………………………..19

*Hanson as Trustee for Layton v. Best*, 915 F.3d 543 (8th Cir. 2019) …………...20

*Hassan v. City of Minneapolis*, 489 F.3d 914 (8th Cir. 2007) …………………29

*Hayek v. City of St. Paul*, 488 F.3d 1049 (8th Cir. 2007) …………………..18, 29

*Jenkins v. Winter*, 540 F.3d 742 (8th Cir. 2008) ………………………………..18

*Krueger v. Fuhr*, 991 F.2d 435 (8th Cir. 1993) …………………………………26

*Ludwig v. Anderson* 54 F.3d 465 (8th Cir. 1995) …………………………*passim*

*Monell v. Department of Social Services of City of New York*,
    436 U.S. 658 (1978) …………………………………………………...13, 18

*Monroe v. Ark. State Univ.*, 495 F.3d 591 (8th Cir. 2007) ……………………..20

*Morris v. Lanpher*, 563 F.3d 399 (8th Cir. 2009) ………………………………15

*Mullenix v. Luna*, 577 U.S. 7 (2015) ……………………………………………20

*Nance v. Sammis*, 586 F.3d 604 (8th Cir. 2009) ………………………………..23

*Parrish v. Ball,* 594 F.3d 993 (8th Cir. 2010) …………………………………...15

*Pearson v. Callahan*, 555 U.S. 223 (2009) ……………………………………..19

*Pierson v. Grant*, 527 F.2d 161 (8th Cir. 1975) ………………………………...15

Appellate Case: 22-2818    Page: 6    Date Filed: 11/21/2022 Entry ID: 5219926

*Reed v. City of St. Charles*, 561 F.3d 788 (8th Cir. 2009) ...........................16

*Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4 (2021) ...........................16, 20, 23

*Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523
    (8th Cir. 2007) ...................................................1, 28, 29, 30

*Scott v. Harris*, 550 U.S. 372 (2007) ...................................2, 15, 16, 17

*Smith v. Conway Cnty.*, 759 F.3d 853 (8th Cir. 2014) ...........................16, 17

*Smith v. City of Minneapolis*, 754 F.3d 541 (8th Cir. 2014) .......................20

*Sok Kong Tr. For Map Kong v. City of Burnsville*, 960 F.3d 985
    (8th Cir. 2020) ...............................................................1, 31

*State v. Noor*, 964 N.W.2d 424 (Minn. 2021) ...................................21, 22

*Swearingen v. Judd*, F.3d 983 (2019) .............................................1, 24

*Tahlequah, Oklahoma v. Bond*, 142 S.Ct. 9 (2021) ...................................20

*Tennessee v. Garner*, 471 U.S. 1 (1985) .........................................1, 23

*Tolan v. Cotton*, 572 U.S. 650 (2014) ..............................................17

*U.S. v. Schooner Peggy*, 1 Cranch 103, 2 L. Ed. 49 (1801) .........................19

*White v. Pauly*, 137 S.Ct. 548 (2017) ..............................................16

*Whitney v. City of St. Louis, Missouri*, 887 F.3d 857 (8th Cir. 2018) ............18

Appellate Case: 22-2818    Page: 7    Date Filed: 11/21/2022 Entry ID: 5219926

## <u>STATEMENT OF THE ISSUES</u>

1.     WHERE THERE IS NO CONTROLLING AUTHORITY REGARDING A HEIGHTENED STANDARD IN MINNESOTA, DID THE DISTRICT COURT PROPERLY HOLD THE OFFICERS WERE ENTITLED TO QUALIFIED IMMUNITY?

Apposite legal authority:

*Graham v. Connor*, 490 U.S. 386 (1980)
*Tennessee v. Garner*, 471 U.S. 1 (1985)
*Swearingen v. Judd*, F.3d 983, 988 (2019)

2.     WHEN THIS COURT HAS REPEATEDLY HELD AN INDIVIDUAL'S MENTAL HEALTH DOES NOT CHANGE WHETHER THEY POSE A DEADLY THREAT AGAINST POLICE, DID THE DISTRICT COURT CORRECTLY EXCLUDE QUINONES'S PURPORTED MENTAL HEALTH ISSUES IN ITS ANALYSIS OF WHETHER THE USE OF DEADLY FORCE WAS OBJECTIVELY REASONABLE?

Apposite legal authority:

*City & Cty. of San Francisco v. Sheehan*, 137 S.Ct. 1765 (2015)
*Sok Kong Tr. For Map Kong v. City of Burnsville*, 960 F.3d 985 (8th Cir. 2020)
*Estate of Morgan v. Cook*, 686 F.3d 494 (8th Cir. 2012)
*Sanders v. City of Minneapolis, Minn.*, 474 F.3d 523 (8th Cir. 2007)

1

On the evening of September 7, 2019, Brian Jesus Quinones-Rosario sent Facebook messages to his younger sister that he was sorry, and then spoke to his teenage son and told him not to look up to him. *Appellant Add. 2-3*; *Appellee App. 33-34, R. Doc. 37-1 at 12-13; Appellant App. 484, R. Doc. 36-10 at 402*. Quinones then hugged his grandfather-in-law and thanked him for teaching him to be a man. *App. Add. 3; Appellee App. 94, R. Doc. 37-3 at 10*. Quinones abruptly left the house and drove away in his wife's sedan. *Id.* Concerned about his odd behavior, his grandfather-in-law and teenage son then got in a car and tried to follow Quinones. *Id*. They also called Appellant to alert her something was wrong. *App. Add. 3-4; Appellee App. 94, R. Doc. 37-3 at 10; Appellee App. 149-150, R. Doc. 37-4 at 25-26*.

---

[1] In her arguments, Appellant does not dispute the district court's statement of facts. However, the "facts" recited by Appellant are often unsupported by the record. That is, nearly all of the facts here are from squad car and Facebook Live video, as well as radio traffic recording. *See App. Add. 13, 16, n.6*. This Court should decline to adopt Appellant's version of events to the extent it is "blatantly contradicted by the record." *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

2

Edina Police Officer Nicholas Pedersen was on patrol that evening. *Appellant App. 968, R. Doc. 36-10 at 886; Appellant App. 1118, R. Doc. 37-5 at 6.* Around 10:00 p.m., Pedersen observed Quinones's vehicle turn through a red light without signaling or stopping. *App. Add. 4; Appellant App. 1112, R. Doc. 36-22 at 0:27–0:34; Appellant App. 969, R. Doc. 36-10 at 887; R. Doc. 37-5 at 11, 14.* Pedersen followed Quinones and shortly thereafter activated his emergency lights to initiate a traffic stop. *App. Add. 4; Appellant App. 1112, R. Doc. 36-22 at 1:26.* Quinones refused to pull over and continued to speed and ignore traffic control devices, at which point Pedersen turned on his siren. *App. Add. 4; Appellant App. 80, R. Doc. 36-1 at 1:26–1:40; Appellant App. 1127, R. Doc. 37-5 at 15.* Pedersen observed Quinones appeared to be using his cell phone. *Appellant App. 969, R. Doc. 36-10 at 887.* Indeed, Quinones was live streaming himself on Facebook Live, and Pedersen's emergency lights can be seen in the background of Quinones's Facebook Live video. *Appellant App. 82, R. Doc. 36-9 at 6:56*[2]. Unbeknownst to the officers, Quinones held a large

---

[2] Contrary to Appellant's recitation which alleges the emergency lights were not visible inside the cab of Quinones's vehicle until eight seconds before he stopped, the Facebook Live video instead shows the emergency lights were visible in Quinones's vehicle for over four minutes before he stopped. *R. Doc. 36-9 at 6:56-12:07.*

Appellate Case: 22-2818     Page: 10     Date Filed: 11/21/2022 Entry ID: 5219926

knife in his hand as he drove. *Appellant App. 82, R. Doc. 36-9 at 8:36-44, 12:07.* Quinones did not pull over despite Pedersen's emergency lights clearly flashing for several minutes in the video. *Id.* Because Quinones refused to pull over, Pedersen had probable cause to believe Quinones was committing the felony offense of fleeing a police officer in a motor vehicle, in addition to his other traffic violations. *App. Add. 4; Appellant App. 1127, 1130, R. Doc. 37-5 at 15, 18.*

Pedersen radioed for assistance and Richfield Police Officers Macabe Stariha, Joseph Carroll, and Dylan Schultz joined the pursuit. *App. Add. 5; Appellant App. 668, 686-87, 702, R. Doc. 36-10 at 586, 604–05, 620.* Edina Police Officer Benjamin Wenande also joined the pursuant. *App. Add. 5; Appellant App. 949, R. Doc. 36-10 at 867.*

Meanwhile, Appellant caught up to her husband in her own vehicle as Quinones was being pursued by multiple squad cars with lights and sirens activated. *App. Add. 5; Appellee App. 149, R. Doc. 37-4 at 26.* Appellant passed Pedersen's squad car mid-pursuit and briefly pulled up next to Quinones's vehicle before braking to avoid hitting other vehicles stopped at a red light. *App. Add. 5; Appellant App. 80, R. Doc. 36-1 at 6:02–6:12; Appellee App. 150, R. Doc. 37-4 at 26.* Quinones, however, ran that red light, nearly colliding with

4

another vehicle turning out of the cross-traffic. *App. Add. 6; Appellant App. 80, R. Doc. 36-1 at 6:09–6:13.*

After observing that near and dangerous collision, Pedersen decided to attempt a PIT maneuver to stop Quinones's vehicle and end the pursuit. *App. Add. 6; Appellant App. 1134, R. Doc. 37-5 at 22.* Pedersen reported his plan over the radio and moved his squad car into position near the right rear bumper of Quinones's vehicle. *Appellant App. 80, R. Doc. 36-1 at 6:23-33; Appellee App. 275, R. Doc. 36-8, 3:03, 3:48.* As Pedersen positioned his left front bumper near Quinones's rear right bumper to initiate the PIT maneuver, Quinones suddenly slammed on his brakes. *App. Add. 6; Appellant App. 80, R. Doc. 36-1 at 6:33.* Pedersen responded by hitting his brakes, but his vehicle did not come to a stop until it was in front of Quinones's right front bumper. *App. Add. 6; Appellant App. 80, R. Doc. 36-1 at 6:33-38; Appellant App. 135, R. Doc. 37-5 at 23.*

Quinones immediately jumped out of his vehicle with a large knife in his hand. *App. Add. 6; Appellant App. 82, R. Doc. 36-9 at 12:07; see also Appellee App. 151, R. Doc. 37-4 at 27* (Appellant testified she kept a kitchen knife in the passenger glove box of Quinones's car). Pedersen exited his squad car, drew his firearm, and he saw Quinones was out of his vehicle brandishing a large

5

knife. *App. Add. 6; Appellant App. 1135-36, R. Doc. 37-5 at 23-24; Appellant App. 976, R. Doc. 36-10 at 894.* Pedersen ordered Quinones to "GET ON THE GROUND!" *App. Add. 6; Appellant App. 1136, R. Doc. 37-5 at 24; Appellant App. 80, R. Doc. 36-1 at 6:39-42; Appellant App. 1112, R. Doc. 36-22 at 6:40-6:48.* Quinones ignored Pedersen's command and instead attacked Pedersen while holding a knife in his right fist above his shoulder. *App. Add. 6; Appellant App. at 80, R. Doc. 36-1 at 6:42-48; Appellant App. 81, R. Doc. 36-2 at 3:35-3:37.*



*Appellant App. 1112, R. Doc. 36-22 at 6:44.*

Pedersen kept his firearm aimed at Quinones and retreated to create distance from Quinones. *Appellant App. 1112, R. Doc. 36-22 at 6:42-48; Appellant App. 81, R. Doc. 36-2 at 3:34-3:39; Appellant App. 1141, R. Doc. 37-5 at 29; Appellant App. 705, R. Doc. 36-10 at 623.*

Appellate Case: 22-2818    Page: 13    Date Filed: 11/21/2022 Entry ID: 5219926



*Appellant App. 1112, R. Doc. 36-22 at 6:46.*

Pedersen mistakenly reported, "He's got a gun," but instantly corrected "He's got a knife!" over his radio. *App. Add. 7; Appellant App. 80, R. Doc. 36-1 at 6:41-47.* Recording of the radio traffic indicates this mistaken reference to a gun was not aired, only the reports of a knife. *App. Add. 7; Appellee App. 275, R. Doc. 36-8 at 4:06–4:13.* Pedersen pointed his firearm at Quinones and repeatedly yelled "DROP THE KNIFE! DROP THE KNIFE! DROP THE KNIFE!", but Quinones refused to comply. *App. Add. 7; Appellant App. 80, R. Doc. 36-1 at 6:44; Appellant App. 81, R. Doc. 36-2 at 3:32-3:38.* Pedersen backed up across the center median as Quinones circled him. *Appellant App. at 80, R. Doc. 36-1 at 6:47-6:52; Appellant App. 81, R. Doc. 36-2 at 3:37–3:40.* Quinones goaded Pedersen saying, "Do it! Do it!" *App. Add. 7; Appellant App. at 80, R. Doc. 36-1 at 6:44–6:52.*

Appellate Case: 22-2818   Page: 14   Date Filed: 11/21/2022 Entry ID: 5219926

Meanwhile, Officers Schultz and Stariha arrived next. *App. Add. 7; Appellant App. 668-669, 702, R. Doc. 36-10 at 586-87, 620; Appellant App. at 81, R. Doc. 36-2 at 3:30-41; Appellee App. at 7, R. Doc. 36-3 at 3:54*. Schultz, who was closer than Stariha, saw Quinones get out of his vehicle and advance toward Pedersen with a large knife. *Appellant App. 704, R. Doc. 36-10 at 622*. Schultz announced over the radio "one out of the car!" *Appellant App. 702, 1042, R. Doc. 36-10 at 620, 960*. Schultz and Stariha heard Pedersen's repeated commands to drop the knife. *App. Add. 7; Appellant App. 669, 704, R. Doc. 36-10 at 587, 622*. Officer Carroll arrived next, also hearing Pedersen shout "drop it! Drop the knife!" *Appellant App. 81, R. Doc. 36-2 at 3:41-3:42; Appellee App. 8, R. Doc. 36-4 at 3:37; Appellant App. 690, R. Doc. 36-10 at 607*.

Schultz approached in an attempt to use his Taser but Quinones suddenly lunged toward him with the knife. *App. Add. 7; Appellant App. 703, R. Doc. 36-10 at 621; Appellant App. 81, R. Doc. 36-2 at 3:42–3:43; Appellee App. 7, R. Doc. 36-3 at 4:04-4:06; Appellee App. 8, R. Doc. 36-4 at 3:39-3:40*.

Appellate Case: 22-2818     Page: 15     Date Filed: 11/21/2022 Entry ID: 5219926



*Appellee App. 8, R. Doc. 36-4 at 3:39.*



*Appellee App. 7, R. Doc. 36-3 at 4:05.*

Appellate Case: 22-2818    Page: 16    Date Filed: 11/21/2022 Entry ID: 5219926

Schultz deployed his Taser, but Quinones continued to charge. *App. Add. 7; Appellant App. 703, 707, R. Doc. 36-10 at 621, 625; Appellant App. 81, R. Doc. 36-2 at 3:42–3:43; Appellee App. 7, R. Doc. 36-3 at 4:06-4:09.*

Believing Quinones was attempting to kill Schultz, Stariha and Pedersen fired their weapons at Quinones. *Appellant App. 81, R. Doc. 36-2 at 3:43–3:45; R. Doc. 36-3 at 4:05–4:08; Appellant App. 669, 978, R. Doc. 36-10 at 587, 896.* Schultz and Pedersen retreated backward, but Quinones did not stop moving forward and did not drop the knife. *App. Add. 7; Appellant App. 704, R. Doc. 36-10 at 622; Appellant App. 81, R. Doc. 36-2 at 3:41-47; Appellee App. 8, R. Doc. 36-4 at 3:39-42.*



*Appellee App. 8, R. Doc. 36-4 at 3:41.*

Schultz dropped the spent Taser, and pulled out his firearm as Quinones continued to move. *Appellant App. 704, R. Doc. 36-10 at 622.* Carroll heard multiple shots and observed Quinones continue to brandish the knife apparently unfazed by the bullets. *App. Add. at 7; Appellant App. at 687, 689-90, R. Doc. 36-10 at 605, 608-609.* Quinones ran toward Carroll as officers continued to yell "DROP IT! DROP THE KNIFE!", but Quinones did not comply. *App. Add. at 8; Appellant App. at 81, R. Doc. 36-2 at 3:44-46; Appellee App. 8, R. Doc. 36-4 at 3:41-3:43.*



*Appellee App. 8, R. Doc. 36-4 at 3:42.*

As Quinones—still holding the knife—advanced toward Carroll and Wenande, both officers, along with Stariha and Schultz, fired additional

11

shots. *App. Add. 9; Appellee App. 7, R. Doc. 36-3 at 4:08–4:11; Appellee App. 9, R. Doc. 36-21 at 3:43-44; Appellant App. 669, 691, 708, 951, R. Doc. 36-10 at 587, 609, 626, 869*. Quinones fell to the ground and finally released the knife, and the officers handcuffed him. *App. Add. 9; Appellee App. 9, R. Doc. 36-21 at 3:44; Appellant App. 81, R. Doc. 36-2 at 3:48–3:52; Appellant App. at 978, R. Doc. 36-10 at 869*. Officers administered first aid, but Quinones died at the scene. *App. Add. 9; Appellant App. 692, 951-953, R. Doc. 36-10 at 610, 869–71*.

Meanwhile, Appellant had joined the police pursuit and stopped her vehicle behind Stariha's squad car. *App. Add. 9; Appellant App. 417, R. Doc. 36-10 at 389; Appellee App. 151, R. Doc. 37-4 at 29*. After Quinones fell, Appellant told Richfield Officer Hailey Quanbeck, "He's suicidal." *Id*. An hour later, Quinones's teenage son texted a friend stating "[h]e wanted it to happen" and "[h]e was gonna commit suicide but he wanted it to be on the cops". *App. Add. 10; Appellant App. 484, R. Doc. 36-10 at 402*.

About five months later, the Hennepin County Attorney's Office found all five officers who discharged their weapons acted lawfully in using deadly force. *App. Add. 10; Appellee App. 257, 270, 272; R. Doc. 36-17 at 3, 16, 18*. The County Attorney declined bringing criminal charges against any of the officers. *Appellee App. 272; R. Doc. 36-17 at 18*.

12

Appellant then brought this lawsuit against these five officers and the Cities of Edina and Richfield. *Appellant App. 9-32, R. Doc. 1 at 1-24*. She asserted claims of excessive force and failure to intervene under 42 U.S.C. § 1983 against the officers in their individual and official capacities, *Id*. ¶¶ 90–96, 109–13; claims of municipal liability under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), against Edina and Richfield, *id*. ¶¶ *97–108*; numerous state law tort claims, *id*. ¶¶ 114–51; and a claim for a declaratory judgment that Edina and Richfield's "policies, pattern of practices, customs, lack of supervision, failure to train, acts, and omissions ... violate the Fourth Amendment to the U.S. Constitution and constitute excessive force in violation of Minnesota state law." *Id*. ¶¶ 152–54. Defendants moved for summary judgment on all claims. *App. Add. 33-34, R. Docs. 27 and 33*.

On July 26, 2022, the district court granted Defendants' motion to dismiss, finding the officers entitled to qualified immunity because the officers' use of deadly force was objectively reasonable. *App. Add. 15-16*. The district court dismissed Appellant's federal claims with prejudice, and declined to exercise supplemental jurisdiction over her state law claims and dismissed them without prejudice. *Id*. This appeal follows.

13

# SUMMARY OF ARGUMENT

Appellant, Ashley Quinones, relies on inaccurate representations of the record and raises arguments which were rejected by the district court as having no basis in law. To begin, Appellant suggests Quinones did not charge at the officers with a knife, which is blatantly contradicted by the video evidence. It is well established an officer may use deadly force against a person who advances toward the officer or another person while brandishing a knife or other weapon capable of inflicting serious injury or death. The officers properly used deadly force to defend themselves from Quinones's attack. The district court properly dismissed Appellant's Fourth Amendment claim because no constitutional violation occurred. Appellant's claim the district court erred by not applying some unspecified qualified immunity standard Minnesota has purportedly adopted is unsupported by any authority. Furthermore, Appellant fails to explain why this purported higher standard should have been applied and how it would lead to a different outcome. Finally, Appellant claims material fact issues remain regarding Quinones's mental health. However, Quinones's mental health is not a factor in the analysis of the claims and does not change the fact he posed an immediate and deadly threat to the officers. It is also not a matter

14

for the jury to decide. Regardless, the record is devoid of any evidence, and Appellant's own testimony refutes the fact Quinones suffered from a mental illness, or the officers had prior knowledge of Quinones's suffering from a mental issue. Therefore, all officers, specifically Richfield Officers Carroll, Schultz, and Stariha are entitled to the protection of qualified immunity and the district court properly dismissed Appellant's claims in their entirety.

## STANDARD OF REVIEW

This Court reviews a grant of summary judgment *de novo*. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010)(citing *Davis v. Hall*, 375 F.3d 703, 711 (8th Cir. 2004)). Summary judgment must be granted when there is no dispute between the parties about any genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317 (1986). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Disputes "as to immaterial facts are not grounds for reversal of a grant of summary judgment." *Pierson v. Grant*, 527 F.2d 161, 165 (8th Cir. 1975); *Morris v. Lanpher*, 563 F.3d 399, 403 (8th Cir. 2009).

15

If "opposing parties tell two different stories," the court reviews the record to determine which facts are material and genuinely disputed, and then views those facts in a light most favorable to the non-moving party – as long as those facts are not so "blatantly contradicted by the record . . . no reasonable jury could believe" them. *Scott*, 550 U.S. at 380; *Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009).

## ARGUMENT

### I. THE DISTRICT COURT PROPERLY HELD THE OFFICERS WERE ENTITLED TO QUALIFIED IMMUNITY.

The district court properly held the officers were entitled to qualified immunity because they did not violate Quinones's constitutional rights. *App. Add. at 12*. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4, 7 (2021)(quoting *White v. Pauly*, 137 S.Ct. 548, 551 (2017)). "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right.'" *Smith v. Conway Cnty.*, 759 F.3d 853, 858

16

(8th Cir. 2014)(alterations in original)(*quoting Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014)). If so, the second prong "asks whether the right in question was 'clearly established' at the time of the violation." *Id.* (*quoting Tolan*, 572 U.S. at 656).

### a. The district court's finding no constitutional violation occurred is supported by the video evidence.

Here, the district court only addressed the first prong of the qualified immunity analysis, finding the officers did not violate Quinones's constitutional rights. *App. Add. 12*. In doing so, the district court found the video evidence clearly shows Quinones charged at officers with a knife and continued moving while still holding the knife. *App. Add. 16 (citing Scott v. Harris*, 550 U.S. 372, 380 (2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Now on appeal, Appellant argues Quinones did not charge at the officers with a knife. *Appellant Brief at 7, 11, 12*. This Court must not adopt Appellant's version of events which is utterly discredited by video evidence. Instead, the video clearly shows the facts and circumstances confronting these officers

17

gave them probable cause to believe Quinones posted a threat of serious physical harm or death, such that the use of deadly force was justified and no constitutional violation occurred. *Graham v. Connor*, 490 U.S. 386, 388 (1980); *Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007). Furthermore, while Appellant does not raise this issue on appeal[3], because there was no underlying constitutional violation, the district court properly held Appellant's *Monell* claim failed. *Monell v. Dept. of Social Serv. of City of New York*, 436 U.S. 658, 691 (1978); *see also Whitney v. City of St. Louis, Missouri*, 887 F.3d 857, 861 (8th Cir. 2018) (holding absent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the City.).

> **b. Appellant fails to establish the existence of a different heightened standard in Minnesota which precludes these officers from qualified immunity.**

Appellant argues the district court erred because it failed to apply a heightened standard for qualified immunity which she claims now exists in Minnesota. *App. Br. at 20.*

---

[3] Because Appellant did not raise her *Monell* or *City of Canton* claims on appeal, those claims are deemed waived. *Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) (holding claims not raised for review in an opening brief are deemed waived.).

18

To begin, Appellant relies on *Carpenter v. Wabash Railroad Company* to argue this Court should apply current changes in Minnesota's legal landscape. *App. Br. at 19, n.118*; *Carpenter v. Wabash R. Co.*, 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558 (1940). In *Carpenter*, the Supreme Court, in reliance on *U.S. v. Schooner Peggy,* 1 Cranch 103, 2 L. Ed. 49 (1801), held that an amendment to the Bankruptcy Act, enacted while the case was pending on petition for writ of certiorari, was to be given effect. *Id.* at 418. The amendment explicitly provided it was applicable to railroad receiverships then pending in any United States court. *Id.* at 419. There is no such comparison here and Appellant's reliance is misplaced.

Next, Appellant conflates the second prong of the qualified immunity analysis regarding whether the right in question was clearly established at the time of the violation. The purpose of qualified immunity is to put officers on notice their conduct is unlawful. *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). Officers are not liable for bad guesses in gray areas, but rather they are liable for transgressing bright lines. *Graham v. Barnette*, 5 F.4th 872, 888 (8th Cir. 2021); *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004). Furthermore, the Supreme Court repeatedly admonishes courts for defining clearly established law at a high level of generality since doing so avoids the crucial

19

question of whether the officer acted reasonably in the particular circumstances they faced. *Rivas-Villegas*, 142 S.Ct. at 7-8; *Tahlequah, Oklahoma v. Bond*, 142 S.Ct. 9, 11 (2021). Clearly established rights are those that are sufficiently clear that every reasonable official would have understood what they were doing violates that right. *Rivas-Villegas*, 142 S.Ct. at 7. This is particularly important in the Fourth Amendment context and in excessive force claims. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Appellant bears the burden of establishing the alleged constitutional right violated was clearly established at the time of the incident. *Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014)(*citing Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007)). The Appellant "must identify 'controlling authority' from the Supreme Court or [the Eighth Circuit] or 'a "robust consensus of cases of persuasive authority'" that places the constitutional question 'beyond debate.'" *Hanson as Trustee for Layton v. Best*, 915 F.3d 543, 548 (8th Cir. 2019)(*citing De La Rosa v. White*, 852 F.3d 740, 746 (8th Cir. 2017)). Here, Appellant does not do so. Certainly an unspecified new standard, which Appellant argues should have been applied by the district court, is, by definition, not supported by any controlling authority or robust consensus of cases, and therefore not clearly established at any time.

20

Instead, Appellant argues the criminal prosecution of Mohammed Noor established a "higher standard" that renders law enforcement criminally liable for all uses of deadly force. *App. Br. at 20*. This is simply untrue and Appellant offers no legal authority to support this argument. Furthermore, this case is not analogous to *State v. Noor*. Noor's victim, unlike Quinones, did not commit a felony, did not wield a knife, did not defy repeated police commands, and did not charge at Noor or anyone else while brandishing a knife. S*tate v. Noor*, 964 N.W.2d 424, 428 (Minn. 2021). Appellant also incorrectly argues the officers' conduct here violated criminal law. *See App. Br. at 19.* However, in February 2020, the Hennepin County Attorney's Office, the same office which prosecuted Noor, determined the use of deadly force in this case was necessary, proportional, and objectively reasonable in the face of the apparent threat of death or great bodily harm, and determined no criminal charges were warranted. *Appellee App. 257, 270, 272, R. Doc. 36-17 at 3, 16, 18*. Nothing in the record even suggests the officers' conduct would give rise to criminal liability.

Next, Appellant argues the district court was incorrect in its footnote 8 stating whether an officer is subject to criminal liability under state law has little bearing on whether the officer is subject to civil liability under federal

Appellate Case: 22-2818     Page: 28     Date Filed: 11/21/2022 Entry ID: 5219926

law. A*pp. Br. at 19; Appellant Add. 19 n.8*. In support of her argument here, Appellant asserts the Hennepin County Attorney's Office in Noor argued "20/20 hindsight' is actually a pejorative phrase for the evaluation of one's conduct after the fact… More to the point,… What the legislature has enacted into law takes precedence over opinions written by federal courts in civil officer misconduct cases." *App. Br. at 22*. Appellant misinterprets the Hennepin County Assistant Attorney's argument, on behalf of the State, in *State v. Noor*. To the contrary, footnote 8 (*Appellant Add. 19 n.8*) echoes the State's argument in *Noor* that the standard in federal civil cases, specifically regarding qualified immunity, is a completely separate concept from what defenses are available for criminal liability under state law. *Appellee App. 11*, *State's Memo. of Law in Opp. to Def's Requested Jury Instructions, State v. Noor*, 27-CR-18-6859 (Minn. Dist. Ct. Apr. 12, 2019)(arguing the Minnesota legislature defines crimes and defenses, and the court should not modify the standard criminal jury instructions based on federal court opinions concerning civil officer misconduct cases).

Finally, Appellant argues this new heightened standard is also found in 2020 Minnesota legislation. *App. Br. at 24*. However, the cited 2020 statute only prohibits Minnesota law enforcement agencies from certain warrior-

Appellate Case: 22-2818    Page: 29    Date Filed: 11/21/2022 Entry ID: 5219926

style training. *See generally* Minn. Stat. § 626.8434 (2020). Nothing in the record indicates warrior-style training was responsible for Quinones's death. This statute does not create a heightened standard and is completely inapplicable to this case.

Whether an officer has used excessive force depends on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Rivas-Villegas*, 142 S.Ct. at 8 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)); *see also Tennessee v. Garner*, 471 U.S. 1, 11 (1985) (holding where the officer has probable cause to believe the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force).

Ultimately, it is well established "[t]he use of deadly force is not constitutionally unreasonable if an officer has 'probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others.'" *Estate of Morgan v. Cook*, 686 F.3d 494, 497 (8th Cir. 2012)(*quoting Nance v. Sammis*, 586 F.3d 604, 610 (8th Cir. 2009)(citations omitted)). When officers are suddenly confronted with a suspect armed with a knife, in close

23

proximity, after ignoring multiple commands to drop the knife, this Court has repeatedly held the use of deadly force did not violate a clearly established right. *See Birkeland as Trustee for Birkeland v. Jorgenson*, 971 F.3d 787, 791-92 (2020)(finding regardless of whether the suspect's movements toward the officers was not voluntary, the suspect's failure to comply with commands to drop the knife, his subsequent stabbing of the police dog, the use of deadly force did not violate a clearly established right); *see also Swearingen v. Judd*, F.3d 983, 988 (2019)(finding the officer's use of deadly force did not violate a clearly establish right where he was suddenly confronted with a noncompliant suspect armed with a knife in close proximity after finding him hidden in a closet). Here, the video confirms Quinones charged at the officers while holding the knife after ignoring repeated commands to drop the knife. *Appellee App. 8, R. Doc. 36-4 at 3:40.* Accordingly, the district court properly determined no constitutional violation occurred because the use of deadly force to stop Quinones from causing serious physical harm or death was objectively reasonable.

### c. No 21-foot Rule or Failure to Warn

Appellant argues the district court incorrectly considered the 21-foot rule. *App. Br. at 25.* First, Appellant cites no Richfield policy concerning a 21-

Appellate Case: 22-2818     Page: 31     Date Filed: 11/21/2022 Entry ID: 5219926

foot rule. Notably, Richfield Policy does not require officers maintain a 21-foot distance; rather, it warns officers are often forced to employ the use of their firearms within 21 feet in 90 percent of cases. *Appellee App. 299, R. Doc. 36-11 at 20*. Nevertheless, Appellant is correct that department policies and guidelines do not create constitutional rights. *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993)(reversing the district court's determination the officer's conduct was unreasonable because it was not authorized under the policies of the Missouri Highway Patrol noting the issue is whether the officer violated the Constitution or federal law, and not whether he violated the policies of a state agency). "State legislatures and government agencies are free to hold government officials to higher standards than the Constitution requires." *Id.* However, the issue is whether the officers' use of force violated federal constitutional standards, not whether it violated department policy. *Id.*; *see also Davis v. Buchanan Cnty., Mo.*, 11 F.4th 604, 628-29 (8th Cir. 2021); *Ebmeier v. Stump*, 70 F.3d 1012, 1013 n.6 (8th Cir. 1995); *Edwards v. Baer*, 863 F.2d 606, 608 (8th Cir. 1988). Thus, an alleged violation of department policy has no bearing on whether the force was objectively reasonable. Most importantly, Quinones controlled the distance and movements, from the moment he left his vehicle, ignored repeated

25

orders to drop the knife, and instead attacked Pedersen and charged at officers with a knife. *Appellee App. 7*, *R. Doc. 36-3 at 4:05-4:09*.

Appellant also relies on *Ludwig v. Anderson* to argue there was no warning before the use of deadly force. *App. Br. at 25; Ludwig v. Anderson,* 54 F.3d 465 (8th Cir. 1995). *Ludwig* is not applicable here and Appellant admits, the Court in *Ludwig* observed the absence of a warning does not "render the use of deadly force constitutionally unreasonable." 54 F.3d at 474 (*quoting Krueger v. Fuhr*, 991 F.2d 435, 440 (8th Cir. 1993)). In *Ludwig*, officers responded to a situation involving an individual known to be emotionally disturbed. *Id.* at 467. Officers shot Ludwig when he ran away toward a street where there were pedestrians, though none would have been in harm's way based on the direction he moved. *Id*. at 473. Ludwig had a knife but had not lunged at any officers or run towards them. *Id*. at 469. One of the officers admitted he did not fear for his own safety. *Id*. at 473. Considering the facts available, this Court in *Ludwig* held unresolved material fact issues remained as to whether Ludwig posed a risk that his flight warranted deadly force which precluded summary judgment. *Id*. at 474.

This case is more analogous to *Estate of Morgan v. Cook*, in which the officer drew his weapon, "pointed it at Morgan [and ordered] Morgan to

drop the knife anywhere from 2 to 15 times." 686 F.3d 494, 497-98 (8th Cir. 2012). The Court noted Morgan should have been on notice from Cook raising the gun and ordering Morgan to put the knife down that Morgan's escalation of the situation would result in the use of the firearm. *Id*. at 498. This Court held the use of deadly force was objectively reasonable. *Id*. Here, Pedersen repeatedly ordered Quinones to "DROP THE KNIFE!" *Appellant App. 80, R. Doc. 36-1 at 6:47-51*. Quinones yelled, "Do it!" at Officer Pedersen, and charged him with the knife brandished. *Id. at 6:50*. Quinones was on notice of the potential use of deadly force, and nevertheless charged at the officers. Under these circumstances, the lack of a specific warning does not render the use of deadly force unreasonable.

## II. QUINONES'S PURPORTED MENTAL HEALTH DOES NOT AFFECT THE ANALYSIS OF WHETHER THE USE OF DEADLY FORCE WAS JUSTIFIED.

Appellant argues the district court erred because a fact issue remains regarding whether Quinones was suffering from an emotional or mental health issue. *App. Br. at 27*. A subject's mental health does not change whether the subject posed a deadly threat to an officer.

Appellant begins by citing to Minnesota Statutes section 609.066, subdivision 1a(4), which states:

Appellate Case: 22-2818    Page: 34    Date Filed: 11/21/2022 Entry ID: 5219926

that peace officers should exercise special care when interacting with individuals with known physical, mental health, developmental, or intellectual disabilities as an individual's disability may affect the individual's ability to understand or comply with commands from peace officers.

Minn. Stat. § 609.066, subd. 1a(4)(2020).

There are several problems with reliance on this statute. First, this statute was not in effect at the time of the incident in 2019. Next, nothing in the record suggests Quinones suffered from a disability which may have affected his ability to understand or comply with the officers' commands. In fact, Appellant's argument Quinones suffered from mental or emotional distress is in direct contradiction to her own testimony. Appellant testified she did not believe Quinones was suicidal, he had no diagnoses of mental health issues, and he was not displaying abnormal behavior that evening. *Appellee App. 145-149*, *R. Doc. 37-4 at 21-25*.

Appellant is incorrect that Quinones's alleged mental health issues are for the jury to decide. In doing so, Appellant's reliance on *Ludwig* is misplaced. *Ludwig,* 54 F.3d 465 (8th Cir. 1995). The Eighth Circuit has repeatedly held an individual suffering from mental health issues, or intoxication, does not change the fact of whether that individual poses a deadly threat against police officers. *Sanders v. City of Minneapolis, Minn.*, 474

28

F.3d 523, 527 (8th Cir. 2007)(holding the fact the subject may have been experiencing a bipolar episode does not change the fact he posed a deadly threat against the police officers.); *Hayek v. City of St. Paul*, 488 F.3d 1049, 1055 (8th Cir. 2007)(holding even if the subject was mentally ill and the officers knew it, his mental state did not change the fact he posed a deadly threat to the officers); *Estate of Morgan v. Cook*, 686 F.3d 494, 498 (8th Cir. 2012)(disagreeing with the Estate's argument that the officer should have evaluated the subject's actions differently given the subject's high level of intoxication, and held intoxication did not alter the fact the use of deadly force was objectively reasonable.); *Hassan v. City of Minneapolis*, 489 F.3d 914 (8th Cir. 2007)(holding even if the subject's behavior indicated he was suffering from mental illness, it did not change the fact he posed a threat to the officers and public when wielding a machete and tire iron); *City & Cty. of San Francisco v. Sheehan,* 137 S.Ct. 1765 (2015)(finding even if officer knew the subject was mentally ill and acted contrary to her training regarding how to respond to a mentally ill person, the officer was still entitled to qualified immunity). All of these cases were decided after the 1995 decision in *Ludwig*. *Ludwig,* 54 F.3d 465.

Appellate Case: 22-2818    Page: 36    Date Filed: 11/21/2022 Entry ID: 5219926

Furthermore, the facts in *Ludwig* are completely different. *Id*. In *Ludwig,* the officers responded to a situation involving an individual known to be emotionally disturbed. *Id*. at 468. As discussed above, officers shot Ludwig when he ran away. *Id*. at 473. While Ludwig similarly held a knife, he had not lunged or moved toward any officers. *Id*. One officer even admitted Ludwig's conduct did not trigger fear for his own safety. *Id*. The Eighth Circuit determined unresolved issues of material fact precluded summary judgment, for example, whether Ludwig posed a risk such that his flight warranted deadly force. *Id*. at 474. This is not the case here. The video evidence clearly shows Quinones never fled, ignored repeated commands to drop the knife, and instead suddenly charged at officers with a knife, causing them to respond with force.

Finally, even assuming Quinones suffered from a mental illness, nothing in the record indicates the officers had knowledge of this. Regardless, "[k]nowledge of a person's disability simply cannot foreclose officers from protecting themselves, the disabled person, and the general public when faced with threatening conduct by the disabled individual." *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007).

Appellate Case: 22-2818    Page: 37    Date Filed: 11/21/2022 Entry ID: 5219926

In *Sok Kong Tr. For Map Kong v. City of Burnsville*, Kong appeared high on meth, but the Eighth Circuit noted it was well-established mental illness or intoxication do not reduce the immediate and significant threat a suspect poses. 960 F.3d 985, 993 (8th Cir. 2020); *see also Estate of Morgan v. Cook,* 686 F.3d at 498. This Court distinguished its decision in *Kong* from *Ludwig,* noting that a knife-wielding man can pose an immediate and significant threat even though he did not commit a violent felony. *Kong*, 960 F.3d at 992-995.

Because Quinones's mental health has no bearing on this analysis, the district court correctly held the officers did not violate the Fourth Amendment when they used deadly force.

## CONCLUSION

Appellees Officers Carroll, Schultz, and Stariha, and the City of Richfield, respectfully request this Court affirm the Order of the district court dismissing Appellant's claims.

31

Dated: November 17, 2022

    s/Julia C. Kelly

Jason M. Hiveley (#311546)
Stephanie A. Angolkar (#388336)
Julia C. Kelly (#392424)
IVERSON REUVERS
9321 Ensign Avenue South
Bloomington, MN 55438
(952) 548-7200
Fax: (952) 548-7210
jasonh@iversonlaw.com
stephanie@iversonlaw.com
julia@iversonlaw.com

*Attorneys for Appellees City of Richfield, Joseph Carroll, Macabe Stariha, and Dylan Schultz*

Appellate Case: 22-2818    Page: 39    Date Filed: 11/21/2022 Entry ID: 5219926

# CERTIFICATE OF COMPLIANCE

Julia C. Kelly, attorney for Richfield Appellees, certifies this brief complies with the type volume limitation contained in Rule 32 (a)(7)(B) and Eighth Cir. R. 28A(h) as follows:

The brief was prepared using Word for Microsoft 365, last updated 2022, Book Antiqua font size 14, and contains 6,404 words in this brief, not including the table of contents and the table of citations. The electronic version of this brief has been scanned for viruses and is virus free.

Dated: November 17, 2022        s/ Julia C. Kelly
Jason M. Hiveley (#311546)
Stephanie A. Angolkar (#388336)
Julia C. Kelly (#392424)
IVERSON REUVERS
9321 Ensign Avenue South
Bloomington, MN 55438
(952) 548-7200
Fax: (952) 548-7210
jasonh@iversonlaw.com
stephanie@iversonlaw.com
julia@iversonlaw.com

*Attorneys for Appellees City of Richfield, Joseph Carroll, Macabe Stariha, and Dylan Schultz*

33